C:\Case Files\Guzman\Motions\Motion to exclude time.wpd

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

|   |   |   |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| v. | : | 1:04-Cr.-10186-JLT |
| HARRY GUZMAN | : | |
| | : | |

---

MOTION – WITH THE ASSENT OF THE UNITED STATES – TO DECLARE THIS MATTER A COMPLEX CASE WITHIN THE MEANING OF THE SPEEDY TRIAL ACT OF 1974 AND TO ADJOURN THE CASE TO A STATUS CONFERENCE TO BE CONDUCTED IN  APPROXIMATELY 180 DAYS

AND NOW COMES defendant Harry Guzman, by his counsel, Carl N. Donaldson, Esquire, and David A. Ruhnke, Esquire, with the assent of the United States, and files this motion to declare this matter a complex case within the meaning of the Speedy Trial Act of 1974 and to adjourn the case to a status conference to be conducted in approximately 180 days.  In support of the motion, counsel respectfully state as follows.

1.     On January 6, 2005, undersigned counsel David A. Ruhnke was advised that he had been appointed, pursuant to 18 U.S.C. § 3005, to serve as "learned counsel" to Harry Guzman in this potential capital case.  Mr. Ruhnke has since spoken on several occasions with co-counsel to Mr. Guzman, Carl N. Donaldson, Esquire, and, as well, with Assistant

United States Attorney Robert E. Richardson, regarding the current status of this case. Mr. Ruhnke has also reviewed the docket sheet of the case and some of the pleadings in the case.

2.      Mr. Guzman made his initial appearance on these charges on June 28, 2004. He was represented by two retained attorneys, Alfred E. Nugent, Esquire, and Mr. Donaldson. It appears that Mr. Nugent is an experienced trial attorney while Mr. Donaldson is less experienced, having graduated from law school approximately five years ago, and never having tried a federal criminal case. The original indictment alleged two acts of arson, in violation of 18 U.S.C. § 844(i), one of which resulted in the deaths of two people. An arson resulting in death exposes a defendant to the death penalty. The indictment originally returned by the grand jury, and superseded on September 8, 2004, each contain a section captioned "Notice of Special Findings," a necessary prerequisite to pursuing the death penalty in a federal criminal case.

3.      It further appears that on July 14, 2004, a proceeding was conducted before Magistrate-Judge Robert B. Collings at which time Mr. Guzman was advised of his right to request counsel "learned in the law applicable to capital cases," 18 U.S.C. § 3005, but that Mr. Guzman, on the apparent advice of counsel, did not request the assistance of learned counsel. On November 18, 2004, however, Mr. Guzman did make a request for the appointment of learned counsel. The following day, Mr. Nugent filed a motion seeking to withdraw, a motion that was granted by Magistrate-Judge Collings on November 24, 2004. As noted, on January 6, 2005, Mr. Ruhnke was appointed as learned counsel.

4.      The process through which a potential federal death penalty case is analyzed

2

by prosecutors, in terms of whether or not the death penalty should in fact be sought in a particular death-eligible case, is governed by a section of the United States Attorneys Manual generally referred to as the Attorney General's "death penalty protocols." These protocols were originally put into place in January of 1995 by Attorney General Reno (the Federal Death Penalty Act of 1994, with its vastly increased number of capital crimes, went into effect on September 13, 1994) and were amended by Attorney General Ashcroft on June 7, 2001. *See* U.S.A.M. § 9-10.00 "Capital Crimes." The protocols contemplate a multi-step process: first, a United States Attorney must decide whether he or she wishes to seek the death-penalty in a given case; next, that recommendation is reviewed at the Department of Justice by a committee appointed by the Attorney General, which then makes its own recommendation to the Attorney General, in consultation with the Capital Case Unit within the Criminal Division; finally, the Attorney General decides whether or not a particular case will be prosecuted as a capital case. At every level of review, the decision-maker is directed to act, in essence, as a jury. Thus, in language that virtually mirrors what federal penalty-phase juries are told, the following standards apply:

> In determining whether or not the Government should seek the death penalty, the United States Attorney, the Attorney General's Committee, and the Attorney General must determine whether the statutory aggravating factors applicable to the offense and any non-statutory aggravating factors sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. To qualify for consideration in this analysis, an aggravating factor must be proved by admissible evidence beyond a reasonable doubt.

3

U.S.A.M. § 9-10.080. With regard to mitigating evidence, the protocols provide:

> Because there may be little or no evidence of mitigating factors available for consideration at the time of this determination, any mitigating factor reasonably raised by the evidence should be deemed established and weighed against the provable aggravating factors.

*Id.* The protocols also note that the above-described analysis is qualitative, not quantitative, and that a single mitigating factor may outweigh several aggravating factors, and vice versa. *Id.* The protocols, therefore, require more of an analysis than a simple review of whether there are provable aggravating factors in a given case. What is required, instead, is a qualitative analysis of the inter-relation between the aggravating and mitigating factors and, on balance, whether a sentence of death is justified on all the evidence, both aggravating and mitigating.

     5.    It appears that, at this point, no effort has been undertaken to investigate the existence or not of mitigating evidence, including any mitigating evidence that relates to the possibility that these crimes are explicable or influenced (if committed by Mr. Guzman), in part, by mental illness. While it does appear that, at a relatively early stage of the case a meeting took place between Mr. Guzman's two retained attorneys and the United Sates Attorney's Committee, it also appears to be the case that no evidence in mitigation of punishment was presented at that meeting. A request has been made to A.U.S.A. Richardson that no recommendation be sent to the Justice Department until Mr. Guzman has had the time to conduct an investigation and thereafter make a meaningful presentation, in the first instance, to the United States Attorney for this district.

6.    Mr. Donaldson has been candid about his lack of experience in cases of this nature and with the trial of federal cases in particular.  Mr. Nugent was to have fulfilled that role on the defense team.  The fact that Mr. Nugent was permitted to withdraw from the case leaves Mr. Guzman without sufficiently experienced trial counsel.  *See*, 21 U.S.C. § 848(q)(5).

7.    The Speedy Trial Act of 1974 allows for the exclusion of time in cases that are "so unusual or so complex" as to make it unreasonable to expect compliance with the Act's time limits.  18 U.S.C. § 3161(8)(B)(ii).  Both the Government and the defense agree that this case falls within that definition and that, therefore, the speedy trial "clock" should be stopped as of the date of this motion and not "re-started" for at least 180 days.  Both the Government and the defense agree that this Court should schedule a conference in approximately 180 days to assess the status of this case at that point.

8.    In the next 180 days, assuming this motion is granted, defense counsel will seek to accomplish the following goals, among others:

- Prepare and file pre-trial motions directed to the non-capital aspects of the case, such as motions to suppress evidence;[1]

- Prepare and file appropriate *ex parte* motions seeking qualified expert and investigative assistance related to both the capital and non-capital aspects of the case, including investigative and expert assistance to assist in the development of a case in mitigation, *see* 21 U.S.C. § 848(q)(9), to present to the United States Attorney in the first instance and then to the Attorney

---

[1]Motions directed to the capital aspects of the case would be premature since it is unknown at this point whether the Attorney General will authorize the case for capital punishment.

5

General's Review Committee on Capital Cases at the Justice Department;

- Prepare and submit a budget covering the pre-authorization phase of the case;

- Prepare and file a motion for the appointment of additional counsel experienced in the trial of federal criminal cases;

- Conduct an appropriate investigation and review of discovery;

- Undertake such other tasks as are necessary to providing quality representation to an indigent defendant facing the most serious charges known to the federal criminal law.

9.    The most serious unknown factor in this matter, as far as the timing of the case and any potential trial date is concerned, is whether the case will, in fact, be prosecuted as a capital case, *i.e.*, whether the Attorney General authorizes (or requires, if authorization is not requested) a capital prosecution. The purpose of the present motion is to provide new counsel with some "breathing room" and to assure that reasonably necessary investigative and expert assistance is provided and that the case moves forward in an orderly manner that also takes fully into account the very serious nature of this prosecution. *See, Wiggins v. Smith*, 123 S.Ct. 2527 (2003).

## CONCLUSION

For the reasons expressed above, an order should be entered, *nunc pro tunc* to the date of the filing of this motion, declaring this matter a complex case within the meaning of the Speedy Trial Act of 1974 and setting a status conference in approximately 180 days.

Respectfully submitted,

CARL N. DONALDSON, ESQUIRE
DAVID A. RUHNKE, ESQUIRE
Co-counsel to Harry Guzman

By: _____
DAVID A. RUHNKE
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000 (voice)
(973)746-1490 (fax)
davidruhnke@ruhnkeandbarrett.com (e-mail)

Dated:      Montclair, New Jersey
            Boston, Massachusetts
            January 12, 2005

7

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of this motion was sent, via fax, to the following:

ROBERT E. RICHARDSON, A.U.S.A.
Office of the United States Attorney
1 Courthouse Way – Suite 9200
Boston, MA 02210
Fax: (617)748-3951

DAVID A. RUHNKE

Dated:      Montclair, New Jersey
            Boston, Massachusetts
            January 12, 2005

8