UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                   )<br>)<br>HARRY GUZMAN               )  | CRIMINAL NO. 04-10186-JLT |

DEFENDANT'S MEMORANDUM IN SUPPORT OF
<u>MOTION TO SEVER OFFENSES</u>

Defendant Harry Guzman respectfully submits this memorandum in support of his motion to sever offenses.

The indictment charges two arson offenses, one carrying a potential sentence of death and the other not.  Count one alleges that on April 3, 2003, Mr. Guzman, acting as a principal or aider and abetter, set a fire at 48-50 Manchester Street in Lawrence, MA in which two people died.  Count two alleges that on June 9, 2003, Mr. Guzman, acting as a principal only, set a fire at 34 Washington Street, also in Lawrence, causing minor exterior property damage.  Review of discovery provided to date shows substantially different proof as to each: the non-capital (and later-in-time) arson offense is bolstered by government surveillance and forensic proof; the death-eligible charge appears to have substantially less forensic support and to rely heavily on inconsistent statements by Mr. Guzman and on testimony from as-yet-unidentified persons who may have made observations at the scene of the offense.  Joining these charges in a common

trial creates obvious risks and a substantial danger of unfair prejudice.  The jury would almost inevitably infer that defendant has a propensity for fire setting and improperly use that inference of propensity in weighing the evidence on the death-eligible charge.  If the jury were to find the government's proof more persuasive on the non-capital count it would almost inevitably and unfairly use that evidence to bolster the death-eligible case where the government's proof, viewed independently, is more problematic.  Defendant submits that careful examination of the benefits of and prejudice from joinder of offenses is particularly called for where the government seeks the ultimate penalty.

Defendant reserves the right to amend or supplement this memorandum in response to the government's reply and to the extent necessitated by additional discovery and investigation.

## THE INDICTMENT AND RELEVANT BACKGROUND

As stated, the indictment sets out two charges: the death-eligible charge of arson resulting in death, arising from a fire on April 3, 2003 at 48-50 Manchester Street in Lawrence, Massachusetts; and arson arising from a fire on June 9, 2003 at 34 Washington Street, also in Lawrence.  Both are alleged to violate 18 U.S.C. § 844(i).  Mr. Guzman is charged solely as a principal with regard to the non-fatal fire.  With regard to the fatal fire, however, he is charged both as a principal and as an

aider and abetter.

The first fire, a multi-alarm blaze at a house at 48-50 Manchester Street, caused two fatalities. The Cause and Origin Report of the Lawrence Fire Department described a fire which destroyed much of the third floor of the building as well as upper decking in the rear of the building. The report concluded that the fire apparently involved the use of an open flame (otherwise unspecified) on available combustibles (otherwise unspecified). A separate laboratory report identified a single trace of a gasoline derivative found at ground level at the rear of the building. No gasoline or other accelerant was detected at the second floor level where the government theorizes the fire originated. The government may also seek to offer inconsistent statements by defendant regarding the fatal fire, one of which was that he was present when another person set the fatal fire. These statements do not mention the fire charged in count 2.[1] The government may also present testimony suggesting the involvement of defendant and another person in the offense.

In contrast, the government's case on the fire charged in count two relies primarily on law enforcement surveillance of defendant. According to the government, defendant was observed in the early morning hours of June 9, 2003, walking from the

---

[1] Defendant submits, by separate motion to be filed on August 3, 2005, that his statements are inadmissible.

3

house where he lived with his girlfriend, 197 West Street in Lawrence, and proceeding around the corner where officers lost sight of him.  Some minutes later, he was observed returning to 197 West Street.  In the meantime, a fire was reported at a house located in the area where defendant was seen walking.  There a resident discovered that a small rug remnant, resting on a counter top on an exterior porch, had been set aflame.  The resident extinguished the fire.  The government may also introduce forensic evidence about the presence of accelerant at the scene, as well as videos of defendant showing him leaving and returning to his house and testimony of surveillance agents.

## ARGUMENT

Joinder is Improper Under F.R.Cr.P.14

The unfair prejudice to defendant that would result from a joint trial requires severance pursuant to F.R.Cr.P. 14.  Rule 14 states in relevant part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14.[2]

---

[2] Denial of a motion to sever is an abuse of discretion where it would cause the defendant to be tried "on the basis of who he was, and not on the basis of the material evidence presented against him."  United States v. Holloway, 1 F.3d 307, 312 (5th Cir. 1993).

As the First Circuit recognized almost forty years ago, joinder of counts carries with it the potential for prejudicial improper spillover because the jury hears evidence of one crime when deciding whether a defendant committed another. United States v. King, 355 F.2d 700, 703-704 (1st Cir. 1966)[3]. In United States v. Jordan, 112 F.3d 14, 16 (1st Cir. 1997), the court described three types of potential prejudice from joinder of offenses:

> "(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither." (citations omitted)

See also, United States v. Gilbert, 92 F.Supp.2d 1,4 (D.Mass. 2000). Other courts have similarly recognized that joinder may give rise to various types of potential prejudice. See, e.g., United States v. Foutz, 540 F.2d 733(4th Cir. 1976)[4]; Drew v.

---

[3] In King, the court held that joinder for trial of two defendants charged in two indictments was improper where one indictment alleged that both distributed narcotics on one date and the other alleged that one defendant distributed narcotics at two other times. That both indictments alleged drug distribution was not sufficient to establish a series supporting joinder.

[4] "(1)[T]he jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;(2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other;

United States, 331 F.2d 85(D.C. Cir. 1964).[5]

Where, as here, the joinder is of offenses which, viewed generically, are of the "same or similar character," the justifications for joinder are the weakest (see, e.g., United States v. Halper, 590 F.2d 422, 430 (2nd Cir. 1978)) and the danger of unfair prejudice from an improper inference of propensity is especially high (see, e.g., United States v. Lewis, 787 F.2d 1318, 1321 and studies cited at 1322 (9th Cir. 1986)), opinion amended and rehearing denied, 798 F.2d 1250 (9th Cir. 1986).

The risk of improper inferences of propensity, predisposition or bad character from joinder of offenses is the same risk recognized in addressing the admissibility of other crimes evidence in Rules 404(b) and 403 of the Federal Rules of Evidence. Accordingly, in addressing whether severance of counts is required, a central question is whether the evidence of one crime would be admissible in a separate trial of the other. If

---

or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." (540 F.2d at 736).

[5] "(1)[H]e may become embarrassed or confounded in presenting separate defenses; (2)the jury may use the evidence of one of the crimes charged to infer a criminal disposition of the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." (331 F.2d at 88).

it would be, the risk of unfair prejudice is low.  If it would not be, the risk of unfair prejudice is heightened.  See, e.g., United States v. Gilbert, supra.

F.R.E. 404(b) provides that "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  As the First Circuit stated in United States v. Lynn, 856 F.2d 430, 434 (1st Cir. 1988), "Rule 404(b) codifies the common law prohibition against the admission of propensity evidence - that is, evidence presented to encourage the inference that because the defendant committed a crime once before, he is the type of person to commit the crime currently charged."

Other-crimes evidence is judged under a two-part test.  The court must first determine whether the evidence has some "special relevance" or "special probative value".  This would include acts probative of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" (see, FRE 404(b)).  If not, the evidence must be excluded.  If there is some special relevance, the court must then engage in the balancing required by FRE 403 to determine whether the probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...".  See, e.g., United States v. Lynn, supra (prior marijuana conviction at trial for conspiracy and importation and possession

of marijuana not sufficiently probative of common scheme or plan or intent and unfairly prejudicial); United States v. Aquilar-Aranceta, 58 F.3d 796 (1st Cir. 1995)(while evidence of prior possession of cocaine under particular circumstances may have special relevance as to the issue of knowledge in later case charging possession of cocaine, evidence should have been excluded as unfairly prejudicial; "...the most powerful inference that the jury was likely to make from the prior conviction is also the forbidden one: that because [defendant] was previously convicted under nearly identical circumstances, she must be guilty here." (58 F.3d at 801)).

In United States v. Gilbert, supra, defendant, a nurse at a VA hospital, was charged with murder and attempted murder of patients under her care at the facility.  The government also charged retaliation against a potential government witness and obstruction of justice through a false bomb threat while the investigation was pending.  The acts alleged to constitute these last two offenses occurred approximately seven months after the last alleged murder.[6]

The court analyzed the admissibility of the evidence of the obstruction and retaliation counts in the murder and attempted

---

[6] Defendant had already been convicted of making a telephone bomb threat based on the conduct charged in the obstruction count.

murder trial under FRE 404(b)and 403.  After concluding that one proffered justification was "merely propensity evidence dressed up in another guise" (id., 92 F.Supp.2d at 5) and that the special relevance of that evidence to consciousness of guilt or intent as to the homicides was minimal (id.), the court evaluated the prejudicial impact and found that the likelihood that the jury would use the marginally relevant evidence to improperly infer propensity was great and created substantial and unfair prejudice.  Thus, the court concluded: "[b]ecause the evidence of obstruction of justice and retaliation would not be admissible at a separate trial under Fed.R.Evid. 404(b) and 403, the joinder of [the obstruction and retaliation counts] is unfairly prejudicial..." (Id., at 7).  Severance was granted.

The government subsequently appealed the court's in limine orders excluding, inter alia, the same evidence at issue in the severance determination.  The court of appeals affirmed the district court's exclusion of that evidence as an appropriate exercise of the district court's discretion. United States v. Gilbert, 229 F.3d 15 (1st Cir. 2000).

Guzman submits that engaging in the requisite analysis of relevance and prejudice requires severance of counts pursuant to F.R.Cr.P. 14 here. Evidence of the June fire would be inadmissible in a trial of the April fire under Fed. R. Evid. 404(b)and 403; the evidence does not have sufficient special

9

relevance and, whatever its probative value, that value is outweighed by its unfairly prejudicial impact, most especially the forbidden inference of propensity.

Count one of the indictment charges arson of a building on Manchester Street in Lawrence on or about April 3, 2003 resulting in the death of two persons. According to discovery provided to date, the government's forensic witness believes that that fire began with an open flame applied to available (but unidentified) combustibles; i.e., someone lit some flammable material. While the report asserts that the point of origin of this fire was a second floor exterior deck, a chemical examination of debris from that area disclosed no trace of accelerant.[7] The government also possesses inconsistent statements made by the defendant concerning the fire, including one that he was present when another person set the fire.[8] The government has interviewed one person - whose identity has been withheld by the government - who alleged that defendant and another were involved in the fire.

Count two of the indictment charges arson of a building on Washington Street in Lawrence on or about June 9, 2003. Based on discovery provided to date, it appears that the government will offer forensic evidence that the fire was started by lighting a

---

[7] According to another report, a single trace of gasoline derivative was found at ground level at the rear of the building, near an area where vehicles were parked.

[8] Those statements are the subject of a motion to suppress.

10

small rug remnant (found burning on an exterior porch) and that traces of an accelerant (gasoline) were found on the rug remnant. The fire was almost immediately extinguished. While defendant made no statements concerning this fire, the government may introduce videotapes and officers' testimony concerning surveillance of defendant's activities around the time of the fire.

The First Circuit addressed the use of evidence of a prior fire in an arson case in <u>United States v. Varoudakis</u>, 233 F.3d 113 (1st Cir. 2000). The government alleged that defendant hired an individual to burn his failing restaurant in order to collect insurance proceeds. An individual involved in that scheme testified that defendant had previously burned a leased automobile, stating to the witness that he was doing so because the lease had expired, he owed excess mileage charges and insurance would cover the loss. The court held that admission of that car burning evidence required reversal. It was not relevant to establishing plan, knowledge or intent as to knowing participation in a common scheme to defraud or the witness' participation in the conspiracy charged. Nor could it be justified as evidence of motive. First, since motive is not an element of an offense, evidence of motive must be offered to prove some other element. Second, the court warned that, with prior bad act evidence offered to prove motive, "'courts must be

on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury.'" (id., 233 F.3d at 120).

United States v. Utter, 97 F.3d 509 (11th Cir. 1996) also involved the use, in an arson case, of evidence of a prior fire which destroyed defendant's home at a time it was in foreclosure[9] as well as evidence of a threat to burn a person's belongings made subsequent to the arson charged. The charged offense alleged the burning of a restaurant owned by defendant, who was in financial difficulty and threatened with foreclosure. The court held the trial court's admission of evidence of the extrinsic acts was error. The subsequent threat "was completely irrelevant to any issue at trial: It sought only to show [defendant's] alleged propensity to commit arson." (97 F.3d at 513). Evidence of the prior fire, even if considered intrinsic evidence of the charged conspiracy because defendant had not disclosed it on an insurance application, should have been excluded as unfairly prejudicial. It "involved a high risk of prejudice" and gave rise to "a real danger that, based upon this evidence the jury may in part have based its conviction that defendant 'uses fire to solve his problems,'..." (97 F.3d at

---

[9] Defendant had obtained insurance on his house, which was in foreclosure at the time it burned. Defendant's girlfriend testified that she saw him give money to an unknown man under suspicious circumstances.

12

515).

Here, as in <u>Varoudakis</u> and <u>Utter</u>, evidence of the June fire would not be admissible in a trial of the April fire. While 404(b)does not preclude the admission of subsequent acts, such later acts are less likely to be probative of elements of an earlier charged offense and more likely to be unfairly prejudicial propensity or bad character evidence. <u>See</u>, e.g., <u>United States v. Garcia-Rosa</u>, 876 F.2d 209, 221(1st Cir. 1989); <u>United States v. Sampson</u>,385 F.3d 183 (2nd Cir. 2004). Such is the case here.

From discovery provided to date, it does not appear that either the April or the June fire was set in any unique way. Admission of other bad acts as evidence of identity requires a showing "that, based solely on the evidence comparing the past acts and the charged offense, a reasonable juror could conclude that the same person committed both crimes." <u>United States v. Carroll</u>, 207 F.3d 465, 469 (8th Cir. 2000). "'[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." <u>United States v. Perkins</u>, 937 F.2d 1397, 1400 (9th Cir. 1991) ("The robbery at issue did not involve any 'peculiar, unique, or bizarre' conduct so as to constitute a personal signature; rather it was similar to most

13

bank robberies."). As the court noted in <u>United States v. Sampson</u>, <u>supra</u>, 385 F.3d at 192-193, n.7, other crimes evidence may not be admitted to prove identity "'simply because [the defendant] has at other times committed the same garden variety criminal act since this would be identification based on the forbidden inference of propensity.'" (subsequent drug offenses not admissible at trial of earlier drug offenses to prove identity or intent).

Lighting combustible material, either with or without the use of an accelerant such as gasoline, on an exterior porch, is by no stretch a distinctive <u>modus operandi</u> or unusual signature behavior supporting admission of the other bad act as evidence of identity. <u>See</u>, <u>e.g.</u>, <u>United States v. Williams</u>, 985 F.2d 634, 637 and n.7 (1st Cir. 1993)(rejecting government argument that prior bad act evidence was relevant to identity since evidence was not "'"so unusual and distinctive as to be like a signature."'"); <u>United States v. Trenkler</u>, 61 F.3d 45,53 (1st Cir. 1995) (recognizing same issues and difficulties but concluding that "numerous similarities in components, design, and technique of assembly [of two bombs], combined with the similar <u>modus operandi</u> and the closeness of geographic proximity..." and circumstances surrounding the bombs supported admission of evidence of prior bomb as evidence relevant to identity); <u>United States v. Carroll</u>, <u>supra</u> (shared characteristics that perpetrator

14

in two bank robberies wore a nylon stocking mask, carried a gun and vaulted over the counter to put bank money in a bag were too common to support admission of prior act as evidence relevant to identity); United States v. LeCompte, 99 F.3d 274 (8th Cir. 1996) (pattern of playing games such as hide and seek with a niece, gaining her confidence, exposing self and later sexually assaulting niece not evidence of sufficiently unique modus operandi to evidence signature behavior so as to warrant admission of that evidence in trial on charges of later sexual abuse of another niece who testified that defendant had asked her if she wanted to play hide and seek on one occasion and had engaged in abusive sexual contact with her on another occasion when she was watching a movie at defendant's home).

   Nor does the discovery disclose any connection between the two fires in terms of any relationship between the defendant and the occupants/owners of the buildings at which the fires occurred or between the occupants/owners of those buildings so as to suggest that both fires were part of a common plan.  Certainly, a subsequent act cannot be viewed as preparation for a prior act. Any suggestion that the subsequent fire has special relevance to establishing intent in relation to the prior fire would improperly depend on an inference of propensity and "there must be some articulable inference for the jury to draw from the previous offense other than that the defendant had the bad

15

character and therefore more probably had the intent to commit the crime he is now charged with." United States v. Lynn, supra, 856 F.2d at 436 (error to admit prior conviction for sale of marijuana in trial on charges of marijuana importation and possession as relevant to intent; evidence lacked special relevance to something other than propensity).  See also, United States v. Trenkler, supra, 61 F.3d at 56, n.19 (court agreed that, at trial on charges involving making of bomb, introduction of evidence of defendant's involvement in the building of a prior bomb could not be supported on theory of special relevance to proving intent since any such theory would "depend heavily on an inference of propensity"); United States v. Mills, 138 F.3d 928, 935-936 (11th Cir. 1998)(evidence of prior falsification of customs document erroneously admitted as relevant to intent to falsify documents submitted to government in connection with efforts to obtain unwarranted reimbursement under Medicare; "the Government's asserted relevance inference is that we can gather from the customs incident that [defendant] is disposed to lie to the government; therefore, being a liar, she must have intended to lie on the passenger manifests.  This inference is precisely the one that Rule 404(b) prohibits; it makes an element of the crime (intent to lie) more probable because of the defendant's character (liar).")

   Based on the foregoing, in this case, admission of the June

16

fire cannot be justified as evidence of intent, identity or plan or modus operandi.  Given the lack of special relevance, Guzman maintains that admission of evidence of the June fire at a trial of the April fire cannot be justified.  Its only impact would be the unfairly prejudicial one of suggesting to the jury that defendant is a fire-setter, and, by virtue of that propensity, is likely to have set the fatal fire.  This can only undermine Guzman's right to due process and a fair trial and enhance the risk of a flawed conviction.

That the potential penalty here is death enhances the need to insure reliability.  As the court recognized in United States v. Green, 324 F.Supp.2d 311, 320 (D.Mass. 2004), vacated on other grounds, 407 F.3d 434 (1st Cir. 2005), severance pursuant to Rule 14 may be well utilized to provide assurances of reliability and safeguard against potential  prejudice from the spillover of evidence from one charge to another where one of the charges is a capital charge:

> The standards for severance are necessarily leavened by the fact that this is a death penalty case.  The threshold for determining what constitutes prejudice and when the jury's ability to render a reliable verdict is compromised is necessarily lower than in the ordinary case.

See also, United States v. Perez, 299 F.Supp.2d 38, 44 (D. Conn. 2004) (granting severance based on evidentiary concerns "given the heightened need for reliability in a death penalty trial"). Accordingly, to help assure the reliability of the verdict on the

capital offense here, severance of counts one and two should be ordered in this capital case.

For all of these reasons, defendant requests separate trials on the capital and non-capital charges.

> HARRY GUZMAN
> By his attorneys,
> David A Ruhnke, Esq.
> Carl N. Donaldson, Esq.
> Charles P. McGinty
>
> /s/ Charles McGinty
> Charles P. McGinty
>    B.B.O. #333480
> Federal Defender Office
> 408 Atlantic Avenue, 3rd Floor
> Boston, MA  02110
> Tel: 617-223-8061