UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CRIMINAL NO. 04-10186-JLT |
| ) | |
| HARRY GUZMAN    ) | |

DEFENDANT'S MOTION TO DISMISS: INTERSTATE COMMERCE

Defendant Harry Guzman respectfully moves, pursuant to Article Eight, Section 3 of the United States Constitution and 18 U.S.C. § 844(i), to dismiss the indictment which charges the arson of two small rental properties in Lawrence, Massachusetts. Defendant submits that the small, locally owned and rented multi-unit dwellings were not being "used" in interstate commerce, or in an activity affecting interstate commerce, as required by the statute and, even if they were "used," it was only in purely intrastate manner with no constitutionally significant effect on interstate commerce.  Thus, 18 U.S.C. § 844(i), if applied to these dwellings, would exceed Congressional authority under the Commerce Clause.  Finally, to avoid troubling issues of constitutionality, the statute should be interpreted to exclude these buildings from its coverage.

RELEVANT BACKGROUND

The indictment alleges the arson of two small, locally owned and rented, multi-family houses in Lawrence, Massachusetts.  One property, a wooden 3-story house at 48-50 Manchester Street, was

heavily damaged by a fire on April 3, 2003, with two fatalities. The second property, a wooden 3-story house at 34 Washington Street, sustained minor exterior damage in a fire on June 9, 2003. The indictment alleges without further detail that both properties were "used in interstate commerce and in activities affecting interstate commerce." On information and belief, both properties were owner-occupied.

ARGUMENT

To preserve the States' traditional police power over local conduct and maintain principles of American federalism, this Court should dismiss the indictments charging violation of 18 U.S.C. § 844(i) as impermissible as applied to this case. In United States v. Lopez, 514 U.S. 549 (1995), the United States Supreme Court set forth three categories of activity that Congress may constitutionally regulate under the Commerce Clause. Id. at 548-59. These are: "the use of the channels of interstate commerce[,]" those activities that affect "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and "those activities having a substantial relation to interstate commerce ...." Id. (internal citations omitted). With regard to the last category, the Court further clarified that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." Id. at 559.

This memorandum proceeds to the third category of regulable activity and, against the background of recent jurisprudence, analyzes the § 844(i) charge in the instant case.  In light of this analysis, defendant submits that the dwellings at issue cannot reasonably be viewed as being used in interstate commerce and activities affecting interstate commerce and that such an application of the law would be constitutionally suspect.  Consequently, the conduct here alleged falls outside the scope of § 844(i), and the indictment must be dismissed.

A.  Section 844(i) Does Not Apply to Arson of Small, Locally Owned and Rented Multi-Unit Dwellings, Because Such Buildings Are not Used in Interstate Commerce or Activities Having a Substantial Effect on Interstate Commerce

Section 844(i) prohibits the malicious destruction or attempted destruction by means of fire of "any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce ...." 18 U.S.C. § 844(i) (2004).  In Russell v. United States, 471 U.S. 858 (1985), the Supreme Court held that the Commerce Clause permits federal jurisdiction over the arson of a non-owner occupied, two-unit apartment building under §844(i).  Id.  In so holding, the Court reasoned that the "rental of real estate is unquestionably" "an 'activity' that affects commerce" within the meaning of the statute and that "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." Id. at 862.  The Court,

thus, concluded that Congress has the power to regulate "individual activities" within the broader class of "activities that constitute the rental market." Id.

Notwithstanding the Court's decision two decades ago, defendant submits that recent jurisprudence has altered the controlling interpretation of § 844(i), specifically, and Congress's Commerce power, generally, such that a different conclusion is now appropriate and necessary. Cf. United States v. Wilkerson, 361 F.3d. 717, 731 n.8 (2nd Cir. 2004) (noting the significance of the Supreme Court's "recent willingness to curtail the Government's ability to prosecute essentially local crimes under federal statutes requiring a sufficient nexus between interstate commerce and the charged offense").

First, the buildings in question were not "used" in interstate commerce or in an activity affecting interstate commerce, as the definition of "used" is understood in common parlance, and therefore are not covered by the provision. In Jones v. United States, 529 U.S. 848 (2000), the Supreme Court rejected the argument that a private, owner-occupied home was "used" in activity affecting interstate commerce, as required by the statute, simply because it passively received utilities from out of state sources, was insured by an out of state company and was subject to a mortgage from an out of state financial institution. Jones, 529 U.S. at 856. The Court explained that

-4-

the statute, containing the qualifying words 'used in,' signaled that Congress had not invoked its full authority under the Commerce Clause. Instead,

> Congress 'required that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." [cite omitted]. The proper inquiry, we agree, 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.' [cite omitted].

Id. at 854. Since the home in Jones was deemed best understood as "used" for "everyday living," its arson was not a crime under § 844(i).

The properties at issue here were owner-occupied, with the owner using the property for "everyday living," as in Jones. Unlike the building in Russell, which was wholly rental, the properties here were only partially so; the mere receipt of rent from persons sharing the owners' residence is akin to the constitutionally insignificant mortgage payment to a bank or fuel payment to a utility company, in neither case sufficient to change the fundamental character of the property to one "used in interstate commerce and in activities affecting interstate commerce." See id. at 855. A partial renting of a small house is not the active employment for commercial purposes contemplated in Jones. It is more analogous to the sorts of small side-ventures, connected to otherwise non-commercial buildings, that courts have found to be insufficiently connected to interstate

commerce.

In United States v. Davies, 394 F.3d 182, (3rd Cir. 2005), the defendant was convicted under § 844(i) of arson of a church, which, inter alia, also operated a small school, bought supplies for that school from out of state vendors, and collected donations to fund an out of state sister church. Id. at 194 (relying in part on Jones and Lopez). The Davies court sought to discern whether the school transformed the building's operations into a "use" in interstate commerce or in an activity that affects interstate commerce. Concluding it did not, the court overturned his conviction on the grounds that these attenuated contacts with interstate commerce did not constitute "active employment" and that there mere fact the church could have been used in a way that might affect interstate commerce was insufficient to bring the buildings under the statute. Id. at 196; see also, United States v. Lamont, 330 F.3d 1249, (9th Cir. 2003) (same).

Likewise, the dwellings here were not in fact being actively used in a way that either directly constituted commerce or had an effect on interstate commerce. That some unspecified rental income was generated by the owners in their self-occupied residences did not alter the primary function of those buildings as private dwellings any more than the supplemental income from the school did in Davies. There is also no evidence that

vacancies in those units were advertised outside the state or to commercial parties, such that there might be an even infinitesimal effect on interstate commerce.  As in <u>Davies</u>, this Court should reject any argument that the buildings' mere "passive [or]  passing [...] connection" to commerce falls within the statute's reach.  <u>Lamont,</u> 300 F.3d at 1256 (quoting <u>Jones</u>, 529 U.S. at 855).

Even if the Court were to find the dwellings were "used" within the meaning of § 844(i), the buildings were not "used in interstate commerce[,]" as alleged in the first part of the indictment.  Courts have found the first method "by which a building can fall within section 844(i)'s interstate commerce element[,]" i.e. being "used in interstate commerce," is acheived when "the commercial function of the property could directly inject it into the stream of interstate [...] commerce...." <u>Davies</u>, 394 F.3d at 193 (citations and internal quotations omitted).  First, for the same reasons noted above in the context of "use," these dwellings are properly understood as having a primary function that is non-commercial, i.e. that of a private home.

Furthermore, even if they might be categorized as partially commercial in nature, they have not been injected into any stream of interstate commerce such that the statute may apply on these grounds.  But <u>see</u> <u>United States v. Rea</u>, 300 F.3d 952, 161-62 (8th

Cir. 2001) (citing Russell for the proposition that rental properties are directly used in interstate commerce because they are part of a broader market).  Defendant submits that, despite intermediate court rulings to the contrary, his conclusion is proper for two reasons.  First, it is consistent with the Lopez Court's re-affirmation that the Commerce Clause may not reach "commerce, which is completely internal, which is carried on between man and man in a State [....]" 514 U.S. at 550 (quoting Gibbons v. Ogden, 9 Wheat. 1, 194-95 (1824)).  It seems overwhelmingly likely this framework excludes a small, multi-unit dwelling that neither advertises to, nor serves residents from out of state, nor even local residents who use the buildings to conduct commerce interstate.  Second, to treat these buildings as being "used in interstate commerce" simply because some rental properties conceivably might be, frustrates the requirement that the jurisdictional element be met in each case as a safeguard against Congressional overreach into the police powers of the States.  Such a broad treatment of the statute would, thus, needlessly and undesirably threaten to render the jurisdictional element of statute superfluous.  See, e.g., Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment") (superceded by statute for unrelated point of law).  This

-8-

constitutionally dubious outcome should be avoided by narrowly reading the statute not to cover wholly intrastate residential arrangements.

Nor were the buildings, as the second portion of the indictment charges, used in "activities affecting interstate commerce" under a constitutionally sound reading of § 844(i). As noted above, the Lopez Court confirmed the constitutional standard for analyzing regulation of intrastate activity is whether that activity "substantially affects" interstate commerce. Lopez, 514 U.S. at 559. In that case, it was concluded that neither aggregation of the "costs of crime" nor detrimental effects on "national productivity" caused by guns in school districts were sufficient to validate the statute. Id. at 563-64. In conducting their analysis, the Court considered three characteristics of the regulation: the economic or noneconomic nature of the regulated endeavor, the presence of a jurisdictional element and legislative findings regarding effects on interstate commerce. Id. at 561-63. Five years later in United States v. Morrison, 529 U.S. 598 (2000), the Court engaged in substantially the same analysis in concluding that 42 U.S.C. § 13981, which provided a civil remedy for gender motivated crimes, was invalid under the Commerce Clause. Id. That statute, like the one in Lopez, did not contain a jurisdictional element, but unlike Lopez, did contain numerous findings

regarding the economic and noneconomic impacts of gender motivated violence.  Id. at 613-14.  The Court reminded that "because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so[,]" id. at 614 (internal quotation marks omitted), and found that Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."  Id. at 617.

Similarities between this line of cases and the case at bar cast doubt on the constitutional validity of § 844(i)'s application here.  The best argument that § 844(i) might constitutionally be applied is that the aggregate effect of repeated arson of small, multi-unit residential buildings might impose larger costs that would, in turn, affect interstate commerce.  This "costs of crime" hypothesis is, however, precisely that which was rejected by the Supreme Court in both Lopez and Morrison.  Lopez, 514 U.S. at 563; Morrison, 529 U.S. at 617.  Notably, several courts have upheld the application § 844(i) to rental property since Lopez.  See, e.g., United States v. DiSanto, 86 F.3d 1238, 1245 (1st Cir. 1996)(attempted arson of restaurant in leased building satisfies interstate commerce element of § 844(i) because targeted restaurant received natural gas and food originating out of state); United States v. Gaydos, 108 F.3d 505, 509 (3rd Cir. 1997); United States v.

Gomez, 87 F.3d 1093, 1094 (9th Cir. 1996); United States v. Martin, 63 F.3d 1422, 1427 (7th Cir. 1995).  Nonetheless, defendant respectfully submits that those conclusions are inconsistent with recent appellate and Supreme Court decisions.

    The multi-factor analysis of Lopez does little to alleviate constitutional concerns about the application of this statute to these facts.  First, the primary activity this statute attempts to regulate is arson -- a wholly non-commercial activity that is analogous to the criminal activities addressed by the statutes in Lopez and Morrison.[1]  Moreover, while § 844(i) does include a jurisdictional element and there were congressional deliberations expressing a desire to reach "[n]early all types of property," Russell, 471 U.S. at 862 (quoting the Congressional Record), neither the presence of such language, nor the occurrence of such a debate in Congress can themselves cure the "substantial effect" flaw outlined above.  See Morrison, 529 U.S. at 614.  Thus, the significant doubts regarding the constitutionality of applying this statute to Mr. Guzman's case persist.

---

[1] As above, we again note that in Russell the Court characterized rental of property as a "unquestionably" "an activity that affects commerce."  Russell, 471 U.S. at 862 (internal quotation marks omitted).  However, that case involved a statutory interpretation challenge, where as we now raise a constitutional issue, for which the analysis most suitably focuses on arson, rather than property rental, as the regulated activity.  See Br. for Pet'r at 37-38, Jones, (1999 WL 1272920).

B.   TO AVOID A CONSTITUTIONALLY DOUBTFUL CONSTRUCTION, THIS COURT SHOULD INTERPRET SECTION 844(i) NOT TO APPLY TO THE SUBJECT DWELLINGS AND DISMISS THE INDICTMENT.

Given these constitutional doubts, this Court should read the statute narrowly, so as to exclude questionable areas, and dismiss the indictment.  After the Jones Court concluded the statute at issue could not constitutionally reach a private residence, they determined the appropriate resolution was to construe the provision's language narrowly "to avoid the constitutional question that would arise were [they] to read § 844(i) to render the 'traditionally local conduct' [...] 'a matter for federal enforcement.'"  Jones, 529 U.S. at 858 (citation omitted); see also Davies, 394 F.3d at 195.  Section 844(i), if interpreted to cover these dwellings, would effectively subject arson of all buildings and personal property not occupied or immediately possessed solely by the owner to federal prosecution and strip the States of their power to police "paradigmatic common-law state crime[s]."  Jones, 529 U.S. at 858.

For all of these reasons, defendant requests the indictment charging two violations of 18 U.S.C. § 844(i) be dismissed.

                                          HARRY GUZMAN
                                          By his attorneys,
                                          David A Ruhnke, Esq.
                                          Carl N. Donaldson, Esq.
                                          Charles P. McGinty

                                          /s/ Charles McGinty
                                          Charles P. McGinty
                                              B.B.O. #333480
                                          Federal Defender Office
                                          408 Atlantic Avenue, 3rd Floor
                                          Boston, MA  02110
                                          Tel: 617-223-8061