# FEDERAL DEFENDER OFFICE
## DISTRICT OF MASSACHUSETTS
### 408 ATLANTIC AVENUE, 3RD FLOOR
## BOSTON, MASSACHUSETTS 02110

TELEPHONE: 617-223-8061
FAX: 617-223-8080

May 20, 2005

Robert E. Richardson, Esq.
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Re: U.S. v. Harry Guzman
Criminal No. 04-10186-JLT

Dear Rob,

Pursuant to Local Rule 116.3(A), we are requesting additional discovery, and also asking for legible copies of some discovery already provided, as follows:

1. Can you please provide legible copies of HG 140, HG 505-7, and HG 480?

2. I am unable to access the contents of the cd-rom marked MSP 03-03023 (1 + 2) 48 Manchester. Can you please provide other copies.

3. In my letter of February 23, 2005, I sought "all videos of surveillance." See ¶1(f). You replied that "videos from June 9, 2003 were previously disclosed, as was a video from the time of the car fire." Government Letter, dated April 8, 2005, at ¶ 1.f. You do not state whether you were producing all surveillance videos. The discovery indicates that there are additional videotapes of surveillance. In the Affidavit in Support of the Application for Search Warrant, State Police Sgt. Robert Irwin stated:

> On or about late April [to] early May 2003 this affiant and other officers were performing a surveillance of a subject known to us as Harry Guzman and the area of 197 West Street. Officers stationed in the area used both video and human surveillance. During this surveillance, on numerous occasions, Officers observed Guzman.... On June 4 into June 5th 2003 during the early morning hours this affiant observed Harry Guzman....

Affidavit at ¶ 3-4. The affidavit indicates the existence of additional videotapes during the period "late April [to] early May" as well as in June. These videos are "material to preparing the defense," see Fed. R. Crim. P. 16(a)(1)(E), were relied upon in the application for the search warrant, and may

FEDERAL DEFENDER OFFICE

be exculpatory of defendant's alleged involvement in other instances of fire-setting. Please provide these videotapes.

4.  In addition to providing the videos of surveillance (request 3, above), please also provide all documents and notes relating to surveillance of Mr. Guzman and of any other persons surveilled in connection with the investigation into the Manchester Street fire as well as into the other fires on Manchester, West, Willoughby and Washington Streets. In the Affidavit in Support of the Search Warrant, these surveillances were described as part of the "facts establishing the grounds for my request to the court for the issuance of a search warrant...." Affidavit at ¶ 2. Since descriptions of these surveillances were offered to support the search warrant, defendant seeks disclosure. Moreover, these records are "material to preparing the defense," see Fed. R. Crim. P. 16(a)(1)(E), and may as well be exculpatory of defendant's alleged involvement in other instances of fire-setting.

5.  The report of ATF S/A Balos, dated August 21, 2003, stated that "[t]he investigation has developed information indicating CRUZ's involvement in the fatal fire." You also provided a partial and undated transcript of Juan Cruz, where he stated that he burned buildings "[i]n South Lawrence" and "a building on Springfield Street," and that "[t]hey wanted me to do it [the fatal fire] but I didn't do it because you know two people died there." HG162-63. Cruz has admitted committing multiple arsons and that multiple persons ("they") had solicited him to set the fatal fire. Plainly, Cruz's possible involvement in the fatal fire, his history of arsons, and his criminal associations with other persons ("they") are both exculpatory and "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Accordingly, please provide:

  a.  the complete recording (and transcript) of the intercept of Cruz (you provided only a partial transcript at HG 161-63);

  b.  all notes and reports relating to the intercept, its date, and to any investigation(s) relating to statements made in the intercept;

  c.  all notes of the debriefings or proffers of the "CW" in HG 161-63 which refer or relate to his statement that "the nigars that I knew they told me it was some dude name JUAN that was involved," or to his statement that "you're BITIN people," or referring to any arsons, including any participation or involvement of "Bitin" or persons associated with "Bitin" in arsons;

  d.  all other intercepts of Juan Cruz by any person or by any law enforcement agency, including ATF, DEA, Lawrence Police Department, or the Massachusetts State Police, including all reports or writings relating to the interceptions or recordings (and all transcripts);

  e.  all reports, notes, tapes, consensual recordings, intercepts, videotapes, email, surveillance records, surveillance videos, witness interviews, interview notes, and data compilations in any form referring or relating to Mr. Cruz's possible involvement in the fatal fire at 48-50

FEDERAL DEFENDER OFFICE

Manchester Street;

f. all notes, reports, tapes, consensual recordings, intercepts, videotapes, email, surveillance records, surveillance videos, witness interviews, interview notes, and data compilations in any form referring or relating to Mr. Cruz's possible involvement in any of the arsons on West, Manchester, Willoughby and Washington Streets;

g. all notes, reports, tapes, consensual recordings, intercepts, videotapes, surveillance records, surveillance videos, witness interviews, interview notes, and data compilations in any form referring or relating to investigations into Mr. Cruz's possible involvement in arsons in South Lawrence and on Springfield Street (as he asserted on the tape), including any forensic reports and cause and origin reports on any fires on Springfield Street;

h. all reports, writings, data compilations, interview notes, proffer notes referring or relating to Cruz's association with other persons engaged in criminal activities, including his associations with Eddy Lopez and Victor Delgado, and with gangs, including the Dome Dwellers, including any allegations that "they" sought his involvement in the fatal fire; and

i. all reports, writings, data compilations, interview notes, proffer notes, videos, tapes referring or relating to the 48-50 Manchester Street fire and the possible involvement of any person, including associates of Eddy Lopez and Victor Delgado or of any gang, including the Dome Dwellers.

6. Please provide all information, reports, writings, data compilations, email or data compilation in any form referring, relating to, or assessing Juan Cruz's possible role in any arson, including in the fatal fire at 48-50 Manchester Street, including any promise, inducement or absolution to Cruz in connection with any fire.

7. Please provide the "taxi records for the night of the fatal fire [which] show [Juan Cruz] was dropped off at 197 West Street prior to the fire," as set out in the ATF report of S/A Balos at 3.

8. Please provide all reports of examination of the "pair of blue and white Nike brand sneakers" worn by Mr. Cruz, as described in the ATF report of S/A Balos at 3.

Thank you.

Very truly yours,

Counsel for Mr. Guzman
David A. Ruhnke
Charles P. McGinty

CPM:lhd



U.S. Department of Justice JUN 2 1 2005

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                    *United States Courthouse, Suite 9200*
                                                     *1 Courthouse Way*
                                                     *Boston, Massachusetts 02210*

June 20, 2005

**FOR PICK-UP**

Charles B. McGinty, Esq.
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02210

        Re:   United States v. Harry Guzman
              Criminal No. 04-10186-JLT

Dear Charlie:

        This is in response to your letters of May 6 and May 20,
including with respect to matters we have previously discussed
orally.

        With respect to your letter of May 6, we have previously
provided additional copies of the CDs and videos; I provided
under cover of my letter dated May 6 the items requested in your
April 6 letter that had not previously been provided
(discoverable reports in the repositories described in the second
paragraph of your April 6 letter are among the items that
previously were disclosed); and I also provided copies of the
autopsy photographs.  See Items 1-3.

        With respect to Item 4, as we have discussed by telephone,
one of the videos previously provided, and some of the
photographs previously provided, were taken at the time of the
search.  There are no other videos or photographs depicting the
search.

        With respect to Item 5, when we ran into one another outside
the building a few weeks ago, I told you that the footprint casts
had not yet been examined.  They now have been examined, with
negative results.  I will provide the report when I receive it.

        With respect to Item 6, the information sought does not

constitute a report or record of an examination or test, and I do
not believe chain-of-custody-type documents are discoverable at
this juncture.

With respect to Item 7, while I do not believe reports of
uncharged fires are discoverable at this stage, we have provided
several such reports previously; are seeking to determine whether
reports exist for these fires; and will provide any such reports
when received.

With respect to Item 8, if you could provide Bates numbers
for the 34 Washington Street report to which you refer, I can
determine whether there is a similar one for Manchester Street,
but I believe we previously have produced the discoverable
reports relating to Manchester Street.

Finally, while we have voluntarily disclosed some statements
of firefighters and occupants regarding other fires, I do not
believe the statements requested in Item 9 are discoverable at
this juncture.

With respect to your letter of May 20, enclosed please find
better copies of the items referred to in Item 1, although the
materials are difficult to reproduce.

As we have discussed with respect to Item 2, I believe the
problem with the images on the CD you refer to is with the images
as originally taken, not with the copying process.

With respect to Item 3, while I do not believe videos from
the other fires necessarily are discoverable – for example, I do
not believe a defendant is entitled to discovery regarding
matters averred in a search warrant affidavit – my intent has
been to provide you with copies of any videotapes taken at/around
the time of the nine fires.  You have some of them already, and I
am having copies made of an additional two.  We have had to send
them out due to the limitations of our in-house equipment, so I
will provide them when we receive the copies.

With respect to Item 4, I do not believe documents and notes
relating to such surveillance are discoverable at this juncture:
they are not material to the preparation of the defense within
the meaning of Rule 16; they are not discoverable because
reference was made to surveillance in the search warrant
affidavit, inasmuch as no provision exists for discovery
regarding information set forth in a search warrant affidavit;
and there is no basis for assuming such materials would be
exculpatory, either of the defendant's involvement in the charged

2

fires or his involvement in the uncharged fires.

With respect to Item 5, I do not read the partial transcript previously provided in the same way you do. (In fact, I think the reference near the end of the transcript to the person who did it not having gotten paid for it is a reference to your client.)

With respect to 5.a and 5.b, the relevant portion of the transcript has been produced. As I said to you and Mr. Ruhnke on the telephone, I am willing to produce the portion of the recording reflecting the portion of the conversation set forth in the transcript under a protective order limiting access to counsel and not the defendant. I do not believe notes and other materials beyond the portion of the recording and the transcript are discoverable.

With respect to 5.c, we previously have produced some materials relating to information that Juan Cruz was involved in the fire. I do not believe that information generally showing Cruz's involvement in other crimes, including tending to show that he is "BITIN people," is discoverable. I am aware of no information regarding the participation of Bitin or persons associated with Bitin in arsons.

With respect to 5.d, I am aware of no other intercepts of Juan Cruz relating to arson. I do not believe that intercepts of Cruz involving other topics, if any, are discoverable in this case.

With respect to 5.e and 5.f, I am aware of no information indicating Cruz's involvement in any of the nine fires other than the April 3, 2003 fire. With respect to that fire, you already have been provided with information suggesting his involvement in that fire. In addition, there is a witness who has said, in substance and among other things, that your client left the vicinity of 197 West Street shortly before the April 3 fire with a container with gas and a white T-shirt around his neck; that he turned left onto Manchester Street; that Cruz was coming from the other direction; that your client and Cruz went behind 48-50 Manchester Street; that either your client alone or your client and Cruz stretched out the T-shirt and put it on the back porch stairs; that your client reached for the container with the gasoline; and that shortly thereafter the building was on fire. Another witness has said, in substance and among other things, that early the morning of the fire Cruz walked down West Street and turned down Manchester Street in the direction of 48-50 Manchester Street; that some time thereafter your client turned

3

from Manchester onto West Street with Cruz; that they crossed the
street and entered the driveway of 197 West Street and began
talking near Solveira's Ford car; and that some time thereafter
the witness heard and saw the emergency vehicles responding to
the fire.

With respect to 5.g, without conceding that the information
sought is discoverable, the Lawrence Fire Department has
determined that there were no arson fires on Springfield Street
during the five years before the fatal fire, and that there has
been only one arson fire since that time, started by setting a
mattress on fire in a room inside the building.

With respect to 5.h, I do not believe that general
information having to do with Cruz's association with persons
involved in other criminal activity is discoverable, except to
the extent of information that "they" sought Cruz's involvement
in the fatal fire. As to information falling into that category,
I am aware of none.

I am aware of no information regarding the involvement of
associates of Eddy Lopez or Victor Delgado, or any gang,
including the Dome Dwellers, in the fatal fire, except to the
extent that your client or Cruz falls into one or more of those
categories.

With respect to Item 6, you have been provided with
information regarding Cruz's possible involvement in the fatal
fire. Other than the recorded conversation discussed above, I am
aware of no information relating to Cruz's involvement in other
arsons. Documents assessing Cruz's possible role in arsons
constitute work product that is not discoverable. Finally,
without waiving or compromising the government's general
declination to provide information regarding promises, rewards,
or inducements insofar as they have been extended to witnesses
whom the government anticipates calling on its direct case at
trial, please be advised that Cruz has not been the subject of
any promise, inducement or absolution.

With respect to Item 7, without conceding it is
discoverable, the government will provide a redacted copy of the
record requested.

With respect to Item 8, there has been no examination to
date of the Nike sneakers referenced.

4

Please call the undersigned Assistant U.S. Attorney at 617-748-3247 if you have any questions.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

ROBERT E. RICHARDSON
Assistant U.S. Attorney

Enclosures

5



**FEDERAL DEFENDER OFFICE**
DISTRICT OF MASSACHUSETTS
408 ATLANTIC AVENUE, 3RD FLOOR
BOSTON, MASSACHUSETTS 02110

TELEPHONE: 617-223-8061
FAX: 617-223-8080

June 29, 2005

Robert E. Richardson, Esq.
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210

                    Re:  U.S. v. Harry Guzman
                         Criminal No. 04-10186-JLT

Dear Rob:

        This letter responds to your letter of June 20, 2005, and asks for some additional materials, pursuant to Local Rule 116.3(A).

        1. Regarding paragraph 8 of our letter of May 6, 2005 and your reply, we had asked for the Fire Department Investigation Report on 48 Manchester Street.  The similar report for the 34 Washington Street fire was marked Bates 025.

        2. You invoke work product regarding documents assessing Mr. Cruz's possible involvement in arsons.  As you know, the privilege provides qualified protection for some documents and tangible things, but it does not bar discovery of facts contained in the document which are otherwise discoverable.  Here, any fact tending to show Mr. Cruz's possible involvement in the fatal fire (or in other arsons) is discoverable, even if the document where the fact appears may otherwise be subject to redaction (as reflecting an assessment of that fact).

        As you know, we have been, and are, seeking discovery of all information in the Government's custody or control which relate to possible participation by persons involved in, but not facing a potential death penalty for, the deaths charged in Count One, including all evidence relating to the participation of Juan Cruz in the deaths, as well as all evidence potentially implicating any other person or persons in the planning and/or commission of the arsons alleged in counts one and two.  Such information is exculpatory.  Moreover, it directly relates to a statutory mitigating factor, namely evidence that "another defendant or defendants, equally culpable in the crime, will not be punished by death."  18 U.S.C. § 3592(a)(4).  In our view, the work product privilege does not protect from disclosure facts relating to the possible participation of others.

        This is an example of the kind of mitigating evidence which *Brady v. Maryland*, 373 U.S. 83 (1963), obligates you to disclose to the defense in a capital case.  *Brady* was itself a capital case

FEDERAL DEFENDER OFFICE

where the evidence wrongfully withheld was relevant only to the penalty-stage of that trial, specifically which of the two defendants had actually killed the victim. Thus, the "Brady doctrine," with which we are all familiar, had its inception in the jurisprudence of capital cases. In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court held that a prosecutor's *Brady* obligations extend to information known to investigating agencies even where the prosecuting attorney has no actual knowledge of the information. *Kyles*, therefore, places an obligation on a prosecutor "to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Id.* at 438. There was significant participation by state law enforcement in this investigation.

In terms of timing, *Brady* requires prosecutors to make disclosure of *Brady* material in time for its effective utilization. In the context of the capital-authorization process that is ongoing in this case, that obligation has already been triggered to the extent that any information within your possession (or of the investigating agencies working on the case) bears on the capital-authorization process.

Accordingly, we reiterate our repeated requests that you provide all facts or allegations, whether relating to Mr. Cruz or any other person, which relate to the possible involvement of others in the fires charged in the indictment or in the fires disclosed during discovery.

3. In your letter, you state: "I do not believe that information generally showing Cruz's involvement in other crimes, including tending to show that he is "Bitin people," is discoverable." Government letter, June 20, 2005, at 3. You carve out an exception: "except to the extent of information that 'they' sought Cruz's involvement in the fatal fire." *Id.* at 4. The identity of the "they" who solicited Cruz to commit the crime, including all information relating to Cruz's criminal associations to the extent they shed light on the identity of the "they," is core exculpatory information. Since your office has conducted a thorough investigation of the Bitin group, including through proffers, we reasonably expect that your office and its investigative agencies are sitting on extensive information about "Bitin" and his people, including Cruz. We view Cruz's involvement with the gang as corroborative of his assertion that "[t]hey" solicited him to do the crime, and request that you reconsider your refusal to produce information.

4. Regarding the arson fire on Springfield Street, mentioned in your letter at 4, please provide the date of the fire, the address of the property, the cause and origin report(s), any police reports, fire investigative reports, information about Cruz's possible involvement in the fire, information about possible involvement of "Bitin" or of any other criminal element or association in the fire, and forensic examination reports.

5. In response to 5.d, you state that you are "aware of no other intercepts of Juan Cruz relating to arson." Letter at 3. Yet, in your discovery, you provided the statement of Juan Cruz that "Tito told him he was wearing a microphone underneath his shirt ... at some point during a conversation about the fire." HG 158. Please inquire to the ATF agents, and the other law enforcement agencies, about the wire worn by "Tito" and produce all tapes and transcripts of the

Counsel for Mr. Guzman
David A. Ruhnke
Charles P. McGinty





**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                    *United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

July 13, 2005

**FOR PICK-UP**

Charles B. McGinty, Esq.
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02210

      Re:  United States v. Harry Guzman
          <u>Criminal No. 04-10186-JLT</u>

Dear Charlie:

     This is in response to your letter of June 29, 2005.

     1.  Thank you for providing the Bates number for the
Manchester Street investigation report that you referred to in
earlier correspondence.  The document beginning at HG 015,
previously produced as part of automatic discovery, is the
investigation report for the Manchester Street fire,
notwithstanding its different formatting.

     2.  We invoked the work product doctrine because of the
broad wording of your requests.  As you know, the defendant has
been provided previously with information regarding Juan Cruz's
possible involvement in the fatal fire, as well as materials
tending to show that others might arguably have had a motive to
set the fire.  Such information has not been withheld on the
basis of the work product doctrine.  The defendant is not,
however, entitled to production of such information in any
particular format.  The defendant is not necessarily entitled,
for example, to copies of the actual reports in which such
information appears (even though you have, in fact, been provided
with redacted copies of a number of such reports).  In
particular, the defendant is not entitled to reports **"assessing**
Juan Cruz's possible role in any arson, including in the fatal
fire . . ."** even though information otherwise made available may
be referenced or discussed in such reports (if any).  <u>See</u> Request

6, your letter of May 20, 2005 (emphasis added).

3.  In my letter I carved out the exception you reference because, if I had such information, I would disclose it.  As I indicated, I am aware of no such information.  As I also indicated, I do not agree with you that, in the portion of the taped conversation disclosed last December, Cruz was indicating that Bitin and his people had solicited him to commit the fatal arson, and I therefore do not believe that wide ranging discovery regarding an unrelated prosecution charging unrelated crimes is appropriate in this case, particularly where we have, at the defendant's request, voluntarily provided substantial information regarding seven uncharged fires.

4.  With respect to the Springfield Street fire, while I do not believe it is discoverable, I will provide a basic report describing the incident.  As the incident has been described to me, it bears no resemblance to the description attributed to Cruz in the transcript that you have, and I am aware of no information suggesting that Cruz, "Bitin," or any of "Bitin's" associates was involved in that fire.  The remainder of the information requested is beyond the scope of discovery.

5.  Given that the case agent is out of town, I have had difficulty confirming my understanding of the number of recordings in which Cruz discusses arson.  I agree that, if there is another such recording, I will provide a transcript of the portion involving the topic of arson, and am willing to produce the corresponding portion of such a recording under a protective order limiting access to counsel and not the defendant.

6.  As we discussed earlier today on the telephone, there is only one version of the report.  Although similar in content, the relevant discussion on page HG 020 relates to the examination of the deck of the third floor porch, while the discussion on page HG 021 relates to the examination of the deck of the second floor porch.

7.  We have previously produced three sets of CDs containing all of the digital photographs relating to the two charged and seven uncharged fires, as well as color photocopies of all of the "regular" photographs of those nine fires.  Producing three sets of all of the "regular" photographs would be unnecessarily expensive, particularly given that most of them concern the seven uncharged fires.  I will agree to give you my set of the photographs, after I have had a chance to number and copy them for my records.

2

Finally, enclosed please find three copies each of surveillance videotapes for part of 4/18/05 into part of 4/19/05, and part of 6/3/05 into part of 6/4/05. (Last November we produced other videotapes, including a tape recorded at or around the time of the car fire.) Enclosed please find also an additional lab report relating to one of the uncharged fires, bearing numbers HG 548 to HG 549.

Please call the undersigned Assistant U.S. Attorney at 617-748-3247 if you have any questions.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

ROBERT E. RICHARDSON
Assistant U.S. Attorney

Enclosures

3