**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-10186-JLT** |
| | ) | |
| **HARRY GUZMAN** | ) | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR DISCOVERY: Re CRUZ**

The defendant has filed a motion (the "Motion") whereby he has moved this Court to order the government to produce additional discovery regarding an individual named Juan Cruz. Specifically, the defendant seeks "the entire tape and transcript of Cruz's intercept[1] and all other Cruz intercepts, as well as information relating to Cruz's criminal associations."

As the defendant acknowledges, the government previously has provided the defendant with information tending to show Cruz's possible involvement in the fatal fire charged in Count One of the indictment. Motion at 1. This information is by no means limited to the partial transcript to which the defendant alludes in his motion. See Motion, passim. Indeed, the information previously provided includes a statement of the defendant himself, in which he claimed to ATF agents, in substance and among other things, that Cruz approached him the night of the fatal fire; that they shared a marijuana "blunt"; that Cruz expressed annoyance with an individual named "Chapo" from whom he

[1]The government understands this term to include consensual monitoring, which is what is at issue here.

told Guzman he had bought drugs; that Cruz suggested they "torch" Chapo; that Cruz took a blanket and a plastic container with gas belonging to Guzman; that Guzman went with Cruz to Chapo's nearby building, located next to the building in which the fatal fire occurred; that Cruz was unable to start a fire because the building had a brick construction; and that Cruz then turned his attention to the neighboring building, using gas from Guzman's container to start a fire on the back porch while Guzman acted as lookout. The information previously provided also includes a witness account of Cruz's actions the night of the fire and witness accounts of statements attributed to Cruz after the fire.

And, while not itself tending to show any involvement by Cruz in the fatal fire, the government did provide the defendant with a partial transcript containing conversation between Cruz and a cooperating witness ("CW"), to which the defendant refers and from which he quotes – selectively – in his Motion.[2]

The main thrust of the defendant's Motion for yet more information regarding Cruz is his contention that, in the transcript, Cruz indicated that, although he did not set the fire, he had been solicited to do so. See Motion at 1. The defendant refers to Cruz as "an admitted arsonist and a drug-

[2]The government more recently provided the defendant with a partial transcript of another conversation between Cruz and the defendant in which, in substance, Cruz repeatedly denied involvement in the fatal fire.

dealing and gun-selling associate of Victor ('Bitin') Delgado." Id. The basis for the defendant's contention that Cruz is an admitted arsonist is the same partial transcript; indeed, the defendant maintains that the manner in which Cruz described having committed a prior fire "is common to some of the fires at issue in this case." Motion at 3.

To the extent it is relevant to the issues before the Court, the government briefly addresses that last contention first. While it is true that Cruz told the CW, in part, that "we" had poured gas on stairs and then ignited it, the more complete version of what he said is as follows:

> How I did it like? We did it in the night time. [CW: With gas?] Yeah, with gas and we poured it on the stairs on all the walls on everything. Then we lit it, and we took drank five beers, I mean we took some bottles and fil[l]ed them with gas and papers and we broke the windows and we threw them inside and it burned.

The building that was the scene of the fatal fire was badly damaged and the rear porch area collapsed such that the remains of the floors were pancaked down at the ground level, but the forensic evidence is consistent with the fire having been set at the location identified by the defendant in his statement to ATF. There is no evidence of gas having been splashed about indiscriminately on stairs and walls, nor is there evidence of the use of Molotov cocktails thrown through broken windows. Similarly, the fire charged in Count Two of the indictment was

set in the rear porch area of another building within close walking distance of the defendant’s residence. There is no evidence of gas poured on stairs and walls, and no evidence of Molotov cocktails; indeed, alert tenants fortunately became aware quickly of the fire and promptly extinguished it. Accordingly, to the extent the issue is relevant to the Motion, the government does not agree that Cruz’s description of how he purportedly set an unrelated fire bears any meaningful relationship to how the fires at issue here were set.

More to the point, the government disagrees that Cruz told the CW in the conversation at issue that he was solicited to set the fatal fire. The relevant exchange, according to the transcript, was as follows:

CW: You’re the one that burned down that house there?

Cruz: Ha, Ha, dog.

CW: Straight up and down dog.

Cruz: I didn’t have anything to do with that.

CW: No, I’m just laughing right now because there’s rumors out there.

Cruz: I had a feeling that you were asking me because of that house.

CW: Yeah, because I wanted to see but then again I didn’t know how to tell you.

Cruz: Na, yo, didn’t got, I was the suspect, but I got stop by the FBI.

CW: That’s what it was, the nigars that I knew they told me it was some dude named Juan that was

involved. So I was like damn if that was Juan I'm going to ask him.

Cruz: They wanted me to do it but I didn't do it because you know tow people died there.

CW: Who died there?

Cruz: A little kid a seven-month-old baby and the mother.

CW: Yo, honestly straight up and down dog and God forgive me for saying this shit because I'm a man and I believe in all that shit dog. But a nigar got to do what a nigar got to do dog.

Cruz: Yeah.

CW: And it sucks that a kid died nigar but yo, a nigar got to do what a nigar got to do dog. That's how I think of it.

Cruz: This nigar that did it, he didn't even get paid for it.

From this conversation, the defendant repeatedly maintains, as if it were fact, that the phrase "They wanted me to do it" is a statement that some "they" had solicited Cruz to set the fire. Considered in the context in which it arose, the government does not believe that is at all what Cruz was saying. The phrase follows immediately on the heels of Cruz's advising the CW that "I was the suspect" and "I got stop[ped] by the FBI." The much more natural reading of the phrase in question, in a conversation heavy with street jargon and awkward grammar, is that the "they" to whom Cruz was referring was the FBI, and that they "wanted [Cruz] to do it" in the sense that they wanted to show that he had set the fire. This reading is supported by what Cruz said

just six lines later: “This nigar that did it, he didn’t even get paid for it.” In the government’s view, this is a clear reference to the defendant. This statement, moreover, undercuts the defendant’s contention that the fire was set at the behest of some “they” who were soliciting people to set the fire for pecuniary gain.

Moreover, even assuming the defendant were correct in his reading of Cruz’s comment, providing him with a complete copy of the transcript and tape, which includes conversation regarding matters unrelated to the fatal fire, sometimes with parties other than Cruz, would not be appropriate. Conversation regarding unrelated matters simply is not exculpatory, and the defendant has articulated no basis for finding otherwise.[3]

The defendant argues that, without discovery as to who “they” were, the jury will be left to wonder who they were, and the defendant will be deprived of the ability to run down this information. Motion at 7-8. As to the jury, the government is not as confident as is the defendant that this information will be before the jury. Given that Cruz denied involvement in the fatal fire, the conversation is not, for example, a statement against Cruz’s penal interest, and the government does not discern any other obvious evidentiary basis for admitting the

[3]As noted above, the government has provided the defendant with a second partial transcript of a conversation between Cruz and the CW in which Cruz denied involvement in the fatal fire.

tape.[4]

As to the identity of the "they" as being exculpatory, the government, again, does not believe in any event that Cruz's comment referred to any effort on the part of *anybody* to solicit him to set the fire. While the government notes the defendant's position that he is not obliged to accept the government's interpretation of Cruz's statement, see Motion at 7 n.1, neither the government nor the Court is obliged to accept the defendant's strained and self-serving interpretation of it.

Moreover, again assuming for the sake of argument that the defendant's interpretation were correct, it is difficult to fathom how providing the defendant with nebulous "information relating to Cruz's criminal associations" would provide meaningful assistance in this regard. Other than the defendant's claim as to the meaning of the phrase in Cruz's conversation with the CW, the government is unaware of any information tending to show that some person or persons asked Cruz to set the fatal fire. Affording the defendant wide-ranging discovery relating to the Delgado and Lopez matters, which appears to be what he is really after, is unwarranted under such circumstances. Any argument that the "they" included Delgado or Lopez, as opposed to

---

[4]Nor is the government convinced that the defendant himself would want it admitted, since the doctrine of completeness would require the inclusion of the statement that "This nigar that did it, he didn't even get paid for it," an obvious reference to the defendant and his role in setting the fatal fire.

someone with whom Cruz had had no prior dealings, would be based on rank speculation.

The defendant is not, in any event, bereft of other options. The most direct approach, of course, would be to ask Cruz, whose identity *is* known to the defendant.

In addition to seeking complete transcripts of Cruz's conversations, including portions having nothing whatever to do with arson or the charged fires, and in addition to seeking broad-based discovery regarding Cruz's "criminal associations," the defendant also seeks copies of the tapes of the Cruz conversations without affording the government the benefit of a protective order. As the government told the defendant's counsel in discussing this issue, the government is concerned that, were the defendant to hear the taped conversation, he might recognize the voice of the CW. As the basis for this concern, the government directs the Court's attention to the Affidavit of Special Agent Konstantino Balos, submitted under seal in connection with the defendant's previous motion to compel disclosure. For the same reasons set forth in said affidavit, including but not limited to the information in Paragraph 7, the government believes that a protective order is warranted, and that the government's proposal that access to the relevant portions of the tapes be limited to counsel but not the defendant strikes a reasonable accommodation between the defendant's desire

for the discovery and the government's concerns. (As is the case with the transcripts, the government, of course, opposes the defendant's discovery of portions of the conversations unrelated to arson or the charged fires.)

**CONCLUSION**

For the foregoing reasons, the defendant's Motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/Robert E. Richardson
ROBERT E. RICHARDSON
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.: Boston, Massachusetts
August 17, 2005

I, Robert E. Richardson, hereby certify that I caused a true and correct copy of the foregoing to be served by electronic filing this date on counsel of record for the defendant.

/s/ Robert E. Richardson
ROBERT E. RICHARDSON