UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.    ) | CRIMINAL NO. 04-10186-JLT |
| ) | |
| **HARRY GUZMAN**    ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER OFFENSES**

The government hereby respectfully opposes the defendant's motion to sever the trial of the two counts set forth in the indictment. As shown below, the defendant is charged in each count with a violation of 18 U.S.C. § 844(i), the federal arson statute, and thus joinder is proper under Fed. R. Crim. P. 8(a), as the offenses charged are "of the same . . . character." The defendant has failed to establish that the joinder of these offenses is prejudicial within the meaning of Fed. R. Crim. P. 14. The evidence shows substantial similarities in the way the two crimes were committed. Moreover, while the government need not establish that evidence of one of the counts would be admissible under Fed. R. Evid. 404(b) at a trial of the other count, such is the case here. The fact that one count is potentially subject to capital punishment should play no role in the calculus, particularly at this juncture, given that no decision has yet been made to seek the death penalty. Accordingly, the defendant's motion to sever counts should be denied.

## BACKGROUND

The defendant is charged in a two-count indictment with arson offenses occurring only two months apart in Lawrence, Massachusetts, one on April 3, 2003, and the other on June 9, 2003. The two fires were part of a string of nine arson fires that occurred between late March 2003 and June 9, 2003; that occurred within easy walking distance of the defendant's girlfriend's residence at 197 West Street; and that ended as abruptly as they began, with the defendant's arrest.

The April 3 fire was set at around 3:00 in the morning and resulted in the death of a young mother and her infant daughter. It caused extensive damage to 48-50 Manchester Street, a multi-unit dwelling located just around the corner from 197 West Street. Among other things, the evidence includes a witness who has said, in substance and among other things, that s/he observed the defendant leave the vicinity of 197 West Street shortly before the April 3 fire with a container of gas and a white T-shirt around his neck; that the defendant turned left onto Manchester Street; that another person was coming from the other direction; that the defendant and this person went behind 48-50 Manchester Street; that the defendant, either alone or with this other person, stretched out the T-shirt and put it on the back porch stairs; that the defendant reached for the container with the gasoline; and that shortly thereafter the building was on

2

fire.  The post-fire investigation conducted is consistent with the fire having been set in the rear porch area of the building.

The defendant spoke to authorities four times regarding the April 3 fire.  The fourth time occurred in November 2003, prior to his federal indictment, when he was being held at the Essex County Correctional Facility awaiting trial on state charges arising from the June 9 fire.  The defendant told investigators, in substance and among other things, that that he was sleeping in a car parked next to 197 West Street the night of the fire. About 30 minutes before it started, a 16-year-old male (the same third party identified by the witness) approached him and the two shared a "blunt."  This person told the defendant that a Hispanic male named "Chapo" had sold him some bad drugs, and suggested that they "torch" Chapo.  The defendant gave this person a sheet and a plastic juice container with gasoline in it, and they went to Chapo's building, located next to 48-50 Manchester Street, where the other person tried to start a fire but was unsuccessful.  This person then, with the defendant as lookout, went to 48-50 Manchester Street, went up the rear exterior stairs to the third-story porch, retreated down to the second floor, poured gasoline on the sheet, lit it on fire, and ran with the defendant away from the building.  In short, the defendant told investigators that he aided and abetted the April 3 fire by providing the accelerant and serving as a lookout.

By the time of the June 9 fire, investigators had video cameras monitoring the outside of 197 West Street. Three of the cameras were located in a building across the street and were monitoring the front of 197 West Street and the areas to the right and to the left. The fourth camera was located in a neighboring building and was monitoring the outside rear of the building. On the night of June 8 going into the morning of June 9, investigators were also conducting physical surveillance.

Shortly before 4:00 a.m., the defendant was observed emerging from the rear of 197 West Street holding something and heading down West Street. The defendant turned the corner toward Washington Street, a street located one block over from, and parallel to, West Street. Investigators followed in a loose surveillance, but the defendant was not in sight when they turned the corner. Shortly thereafter investigators smelled smoke, and found it to emanate from an arson fire that had been set using gasoline at the rear porch area of 34 Washington Street, another multi-unit dwelling. Tenants fortunately quickly became aware of and extinguished the fire.

The defendant returned to 197 West Street and hid something under garbage bags. He then stood on the rear porch of 197 West Street, looking in the direction of 34 Washington Street, where the fire had been set. He fled inside when investigators

approached the back of the building. A third-floor tenant[1] allowed investigators into his apartment, and they found the defendant in a bedroom with covers over him. He started yelling, in substance, "Who is it? Who is it?" Upon being removed from the bed and informed that he was under arrest for arson, the defendant blurted out, in substance, that he had done nothing wrong and had been sleeping up in the third floor apartment, claiming that he had been up there for hours sleeping and that the police were just out to get him.

Investigators obtained a search warrant. Among other things, they recovered a juice container filled with gasoline from under the garbage bags, where the defendant had hidden something. The container is consistent with the container the defendant said was used in connection with the April 3 fire.

## ARGUMENT

Rule 8 of the Federal Rules of Criminal Procedure provides, inter alia, that "[t]wo or more offenses may be charged in the same indictment . . . in a separate count for each offense if the offenses charged . . . are of the same or similar character . . . ." Here, the two counts charge the identical offense -- arson -- and thus the two offenses are properly joined under Rule 8. The defendant argues, nonetheless, that joinder here prejudices the defendant and that this Court should sever the trial of the two

---

[1] The defendant's girlfriend lived on the second floor.

counts pursuant to Fed. R. Crim. P. 14.  For the reasons set forth below, the defendant's motion for severance should be denied.

As an initial matter, whether there is sufficient prejudice in joinder to warrant separate trials is an issue committed to the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion.  United States v. Lane, 474 U.S. 438, 449 n. 12 (1986); United States v. Castillo, 77 F.3d 1486 (5th Cir. 1996).  A showing that a defendant would have a better chance of acquittal with separate trial does not establish prejudice requiring severance.  United States v. Ritch, 583 F.2d 1179, 1181 (1st Cir. 1978).  Rather, the showing a defendant is required to make is variously described as a "strong showing of prejudice," United states v. Thomann, 609 F.2d 560, 654 (1st Cir. 1979); "substantial prejudice," United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980); "compelling prejudice," United states v. Staller, 616 F.2d 1284, 1294 (5th Cir. 1980); and "clear prejudice," United States v. Bridwell, 583 F.2d 1135, 1142 (10th Cir. 1978).  The showing of substantial prejudice, moreover, cannot be speculative; instead, a defendant must demonstrate "actual prejudice," which the First Circuit defines as a "substantial and injurious effect or influence in determining the jury's verdict."  United States v. Melendez, 301 F.3d 27, 36 (1st Cir. 2002)(citations omitted).

The defendant has failed to satisfy this heavy burden here.

Much of the defendant's motion is directed toward whether proof of each count would be admissible as proof of the defendant's guilt on the other count under Fed. R. Evid. 404(b). But it is not necessary that evidence of offenses joined under Rule 8 be admissible under Rule 404(b) for purposes of the other counts when a defendant seeks severance under Rule 14. To the contrary, as the First Circuit recognized in United States v. Mackey, 117 F.3d 24, 26 (1st Cir. 1997): "Joinder of counts is often maintained even where evidence of one crime would not be admissible as substantive proof of the other."[2] See also United States v. Lewis, 626 F.2d 940, 945 (D.C. Cir. 1980); United States v. Lewis, 547 F.2d 1030, 1033 (8th Cir. 1976); United States v. Kellerman, 432 F.2d 371, 374-75 (10th Cir. 1970).

Here, as set forth above, the defendant is charged in two counts with violations of the same statute: 18 U.S.C. § 844(i). The specific evidence, moreover, shows substantial similarities between the two offenses, both in how they were committed and in terms of geographic and temporal proximity. Specifically, both fires were consistent with having been set in the rear porch areas of multi-unit dwellings; both fires were set in the early

---

[2] As it happened, evidence of the offense in question was admissible under Rule 404(b) in the Mackey case.

morning hours; both were set using gasoline as an accelerant[3]; both were set in the spring of 2003, just two months apart; and both were set within spitting distance of the defendant's girlfriend's residence, where the defendant was staying.  This case is thus highly analogous to a number of cases in which the First Circuit has upheld convictions notwithstanding a defendant's claim that the joinder of offenses prejudiced him.

For example, in United States v. Taylor, 54 F.3d 967 (1st Cir. 1995), the First Circuit confronted an argument that two bank robbery counts should have been severed.  The First Circuit noted that the two robberies involved the same type of victims – federally insured banks; were charged under the same statute; took place in the same locale – downtown Boston; and occurred in the same time frame – successive days; and that the counts were thus properly joined under Rule 8(a).  Taylor, 54 F.3d at 973.  In terms of whether the court below had committed a patent abuse of discretion in declining to sever the counts, the First Circuit observed that it had routinely upheld trial court refusals to sever bank robbery counts.  Taylor, 54 F.3d at 974, citing United States v. Chambers, 964 F.2d 1250 (1st Cir. 1992); United States v. Gray, 958 F.2d 9 (1st Cir. 1992).  In rejecting the Taylor defendant's argument that the jury might have convicted him of

---

[3] Both the defendant and the witness have indicated that gasoline was used for the April 3 fire.

one of the robbery counts only because of his involvement in the other, the First Circuit noted that "[t]his type of spillover is standard fare whenever counts involving discrete incidents are linked in a single indictment. We have repeatedly held that such a garden variety side effect, without more, is insufficient to require severance." Taylor, 54 F.3d at 974, citing United states v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990).

Here, as in Taylor, the offenses involved the same types of victims (owners/residents of multi-unit dwellings); are charged under the same statute; took place in the same locale (the defendant's immediate neighborhood in Lawrence), and occurred in the same time frame (the spring of 2003). Additionally, as in Taylor, the defendant's argument here essentially boils down to a speculative, conclusory contention that the jury might find him guilty of one count only because it believes him guilty of the other. This is precisely the sort of claim that the First Circuit has roundly rejected as a basis for severing counts. Indeed, any fear that the jury might so act can effectively be eliminated at trial by an instruction to the jury that each count must be considered on its own merits. Taylor, 54 F.3d at 974.

The defendant's extensive discussion of cases decided under Fed. R. Evid. 404(b) is thus somewhat beside the point: as noted previously, admissibility of the evidence underlying one count under Rule 404(b) as proof of the other count is not necessary to

9

the denial of a motion to sever.  In this case, however, the government believes that the evidence is so admissible, on at least two bases, and thus even the defendant's speculation that he might be prejudiced is completely undermined because evidence of each of the fires would be admissible at the trial of the other anyhow.  See Mackey, 117 F.3d at 26-27.

Rule 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident..."  Fed. R. Evid. 404(b).  The First Circuit has recognized that the rule is to be interpreted broadly.   See United States v. Fields, 871 F.2d 188, 196 (1st Cir. 1989)("'the range of relevancy outside the ban is almost infinite; and further, . . . the purposes are not mutually exclusive for the particular line of proof may fall within several of them'"), quoting McCormick, Evidence § 190, at 448 (Cleary, ed. 1992).

The First Circuit recognizes a two-step process for determining the admissibility of evidence under Rule 404(b). See, e.g., United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996).  First, the district court must determine whether the evidence offered is probative of, i.e., has "special relevance"

10

to, a material issue other than character.  Id.; see also United States v. Williams, 985 F.2d 634, 637 (1st Cir. 1993)(trial court must first determine whether evidence has any "special relevance" to material issue).  If the evidence does have special relevance, the court must conduct an analysis under Fed. R. Evid. 403 to determine whether the probative value of the proffered evidence is "substantially outweighed by the danger of unfair prejudice."  Huddleston v. United States, 485 U.S. 681, 687 (1988); see United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990)("similar act" evidence survives Rule 404(b)'s absolute ban against "bad character" evidence where at least one permissible inference possible); United States v. Mazza, 792 F.2d 1210, 1222 (1st Cir. 1986)(where "prior act" evidence proves relevant to legitimate issue, such evidence admissible subject only to balancing test of Rule 403).

This does not mean, of course, that evidence should be excluded under Rule 403 simply because it is prejudicial.  All evidence, if it is relevant, is in some sense "prejudicial"; Rule 403, however, is concerned only with "unfair prejudice," which is limited to evidence that carries a genuine risk "that the emotions of the jury will be excited to irrational behavior, and that the risk is disproportionate to the probative value of the evidence."  United States v. Fahey, 769 F.2d 829, 849 (1st Cir. 1985), quoting United States v. Zeuli, 725 F.2d 813, 817 (1st

Cir. 1984)); cf. United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1984)("We agree that this evidence, like most evidence offered against a defendant, is prejudicial. . . . [T]he question is whether the probative value of the evidence was substantially outweighed by the danger of undue prejudice").

Here, among other things, the government must prove that the defendant acted maliciously, with at least a willful disregard of the potential that his actions would result in the damage or destruction of the residences, and not as the result of a mistake or accident.  Each of the fires provides powerful evidence that the defendant acted maliciously with respect to the other.  The fact that the defendant was responsible for the April 3 fire, which caused extensive damage to 48-50 Manchester Street, helps to show that he appreciated the consequences that could attend lighting a fire on the rear porch of a residential building in the early morning hours, and hence helps to show that he acted with the requisite malice in setting the June 9 fire, even though that fire was quickly discovered and resulted in almost no damage.  Similarly, the fact that he set the fire on June 9, knowing what had happened with the earlier fire, helps to establish that the outcome of the April 3 fire was not a mistake but instead what the defendant had foreseen, and hence that the defendant acted on April 3 with the requisite malice.

Use of 404(b) evidence to prove a mens rea element such as

12

malice or intent is a well-accepted basis for admitting such evidence.  For example, in <u>United States v. Tan</u>, 254 F.3d 1204 (10th Cir. 2001), the Tenth Circuit held, in the context of the government's interlocutory appeal, that the district court had erred as a matter of law in concluding that evidence of the defendant's seven past drunk driving convictions were not offered for a proper purpose under Rule 404(b).  The Tenth Circuit stated: "From the number of convictions, the jury could infer that Defendant does not care about the risk he poses to himself and others since he continues to drink and drive.  Such evidence is highly probative of malice."  <u>Tan</u>, 254 F.3d at 1210-11.  The same is true here: from the fact that the defendant set another fire after previously setting a fire that resulted in the substantial destruction of a building, the jury can infer that the defendant was aware of and did not care about the danger he was causing in setting the second fire.  Similarly, in setting the second fire, the defendant revealed that the result of the previous fire had been what he intended.

    The fires are also relevant on the issue of identity.  Nine fires were set between March 31, 2003 and June 9, 2003.  Three of them occurred on West Street, either in the defendant's girlfriend's building or right nearby.  One was on Willoughby Street, near to where it intersects with West Street and very close to the girlfriend's buidling.  Four more were on Manchester

Street, one (the April 3 fire) just off to the left as one turns onto Manchester from West Street, and the other three within the first block off to the right.  The last one, the June 9 fire, occurred on Washington Street, just one block over from West Street and visible from the rear of 197 West Street.  While one fire was set in a car and another in a shed, most of the fires were set at residential buildings.  All of them were set within essentially a one-block radius of 197 West Street.  The remains of two of them were discovered in the afternoon and it is thus not known when they were set, but the others all occurred in the early morning hours, between midnight and 5:15 a.m.  The fires, which caused much consternation in the neighborhood, stopped abruptly, when the defendant was arrested on June 9, 2003.

This case accordingly bears startling resemblance to People v. Erving, 63 Cal.App.4th 652, 661-63 (Cal. Ct. App. 1998), a case in which uncharged fires were held properly admitted to help establish the identity of the individual responsible for four charged fires.  Specifically, the People adduced evidence that almost 40 fires occurred over time in four different neighborhoods in which the defendant lived.  In each of these neighborhoods few arson fires had occurred before the defendant arrived, and they stopped when she moved.  The fires generally were set using an open flame and ready combustibles and occurred in houses, storage sheds, cars, and trash bins.  The appellate

14

court upheld admission of evidence of the other fires on the issue of identity, not because the mode of setting them established a signature, but rather because each occurred within easy walking distance of the defendant's residence.[4]

The defendant cites to two cases in which the admission of other fires under Rule 404(b) has been held to be reversible error.  See United States v. Varoudakis, 233 F.3d 113 (1st Cir. 2000), and United States v. Utter, 97 F.3d 509 (11th Cir. 1996). In each of those cases the defendant was charged, in essence, with burning commercial property while under financial duress in order to obtain insurance proceeds.  The First and Eleventh Circuits were concerned that evidence of the uncharged fires served simply to show that the particular defendant resorted to fire to solve his problems and hence was propensity evidence. The introduction of uncharged fires is, however, far from a basis for automatic reversal; indeed, and quite to the contrary, the First Circuit recently held that a district court's decision to exclude evidence of a prior fire was an abuse of discretion and held that evidence of this fire both possessed the requisite "special relevance" and passed muster under Rule 403.  United States v. DeCicco, 370 F.3d 206 (1st Cir. 2004).  Here, as in DeCicco, evidence of the other fires is highly probative, in this

---

[4] In so doing, the court invoked the doctrine of chances, relying on United States v. York, 933 F.2d 1343 (7th Cir. 1991), and United States v. Woods, 484 F.2d 127 (4th Cir. 1973).

15

case on the issues of malice and identity.

Finally, the Court should reject the defendant's argument that the counts should be severed because Count One carries the potential for capital punishment.  This fact does not increase the risk that a jury will convict the defendant of either of the counts based on improper considerations.  As shown above, the defendant has failed to establish the prejudice requisite to severance under Rule 14.  If the Court agrees with the government at trial that evidence of each fire is admissible for purposes of the trial of the other under Rule 404(b), it will so instruct the jury.  If the Court disagrees, it will instruct the jury that the evidence underlying each count must be considered separately. Either way, any concern that the defendant will be convicted based on mere propensity rather than proper considerations will be eliminated.  But the potential punishment the defendant faces should play no role in this calculus, particularly at this juncture where no decision has yet been rendered as to whether the government will seek the death penalty or not.

**CONCLUSION**

For the foregoing reasons, the defendant's motion seeking severance of the counts should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                By:   /s/Robert E. Richardson
                      Robert E. Richardson
                      Assistant U.S. Attorney