UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) CRIMINAL NO. 04-10186-JLT |
| | ) |
| **HARRY GUZMAN** | ) |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS: VIDEOTAPED SURVEILLANCE

The defendant has filed a motion (the "Motion") whereby he seeks the suppression of videotaped surveillance of the outside of 197 West Street, Lawrence, Massachusetts, claiming that such violated his "right to privacy in his residence and in the curtilage of his residence, and his right to be free from warrantless police intrusion."  Because the areas captured on videotape were areas exposed to public view in which the defendant had no reasonable expectation of privacy, the Motion should be denied.

BACKGROUND

In the spring of 2003, a series of arson fires occurred in Lawrence, Massachusetts in close proximity to the home of the defendant's girlfriend, located at 197 West Street in Lawrence. Most of the fires were set at residential buildings, and one of them, charged in Count One of this Indictment, resulted in the death of a young mother and her infant daughter.

The video recording at issue here was of the outside of 197 West Street, which is a multi-unit rental property in which a number of tenants in addition to the defendant's girlfriend

resided.  Initially, there was a single camera, located at the first-floor level of a building on the other side of West Street and recording the front of 197 West Street.  As of June 9, three more cameras had been added.  Two of the three were in the same location as the first and were simply pointed at different angles to record the areas to the right and left of the area the first camera was monitoring.  As of June 8, members of law enforcement were also conducting physical surveillance themselves from the place in which these three cameras were located.  The final camera was located at the second-floor level of another building and recorded the rear area of 197 West Street – an area readily visible to neighbors.

   None of the cameras were trained on any of the windows of 197 West Street or were otherwise set up to capture activity taking place inside that building.  Instead, they recorded common areas surrounding the building that were exposed to public view.  As of June 8, they were capable of recording in low light (although they did not, as the defendant believes, have "low light lenses").  The ability to record in low light conditions, however, simply enabled the cameras to record what was visible to the naked eye without requiring the introduction of artificial light.  The cameras were not equipped to make use of infrared technology, thermal imaging, or other similar technology to render them capable of "seeing" things not visible to the human

eye.[1]

## ARGUMENT

As the Tenth Circuit has recognized, "[t]he use of video equipment and cameras to record activity visible to the naked eye does not ordinarily violate the Fourth Amendment." United States v. Jackson, 213 F.3d 1269, 1280 (10th Cir. 2000), citing Dow Chem. Co. v. United States, 476 U.S. 227 (1986) and California v. Ciraolo, 476 U.S. 207 (1986).  The issue in Jackson was whether the district court had erred in denying a motion to suppress evidence obtained by means of two video cameras installed on the tops telephone poles overlooking two residences, including that of one of the appellants.  The Tenth Circuit affirmed the district court, noting that the cameras were incapable of viewing inside the houses and instead could observe only what a passerby could see, and held that there was thus no need for the officers

---

[1] The defendant notes in his Memorandum that "videos and/or surveillance revealed defendant talking with people, walking about the front, side and rear of the property, and engaging in sexual activity with his girlfriend." Memorandum at 3, footnote omitted.  The defendant cites as the source of this statement an affidavit of Sergeant Irwin of the Massachusetts State Police. Id. at 3 n. 3.  The defendant has unintentionally created the impression that the apparent sexual activity was observed by means of the video recording; actually, Sergeant Irwin's affidavit indicates that law enforcement officers conducting physical surveillance observed the defendant and his girlfriend engage in apparent sexual activity.  This activity, moreover, although of the sort that usually occurs behind closed doors, in this case occurred in a car parked in the driveway of 197 West Street, a location visible to passersby and to any neighbor who happened to look out his or her window.

to obtain a warrant before installing and using the video camera. Jackson, 213 F.3d at 1281. In so doing, the Tenth Circuit relied, in part, on the Supreme Court's determination in Ciraolo that aerial observation of a fenced-in back yard within the curtilage of a home without a warrant does not violate the Fourth Amendment. See Ciraolo, 476 U.S. at 213. The Tenth Circuit also relied on the Supreme Court's recognition in Katz v. United States, 389 U.S. 347, 351 (1967), that activity that a person knowingly exposes to the public is not subject to Fourth Amendment protection and consequently is not constitutionally protected from observation.

Likewise, in United States v. Gonzalez, 328 F.3d 543, 548 (9th Cir. 2003), the Ninth Circuit recognized that "'[v]ideo surveillance does not in itself violate a reasonable expectation of privacy,'" and that "'[v]ideotaping of suspects in public places, such as banks, does not violate the fourth amendment; the police may record what they normally may view with the naked eye,'" citing United States v. Taketa, 923 F.2d 665, 675 (9th Cir. 1991). This followed the Ninth Circuit's previous decision in United States v. McIver, 186 F.3d 1119 (9th Cir. 1999), in which that court held that defendants growing marijuana on national land had no reasonable expectation of privacy, and that it therefore was permissible for investigators to place unmanned, motion-activated cameras in the area to obtain images of the

defendants harvesting the marijuana.  In so doing, the Ninth Circuit rejected the notion that using a "mechanical eye" to conduct the surveillance was unconstitutional, observing that the use of photographic equipment to gather evidence that could be observed lawfully by a law enforcement officer does not violate the Fourth Amendment.  McIver, 186 F.3d at 1125.[2]

In arguing that, in this case, the video surveillance contravened his constitutional rights, the defendant places heavy reliance on the Fifth Circuit's decision in United States v. Cuevas-Sanchez, 821 F.2d 248 (5th Cir. 1987).  That case is, however, readily distinguishable.  In Cuevas-Sanchez, the government had obtained a warrant to place a video camera on the top of a power pole overlooking a 10-foot-high fence bordering the defendant's back yard.  The Fifth Circuit rejected the government's argument that no warrant had been required in any event because the defendant had no reasonable expectation of privacy in a backyard visible to casual observers.  The Fifth Circuit distinguished Ciraolo on the ground that there the Supreme Court had held that a single observation from an airplane of a defendant's yard did not constitute a search, but that Cuevas had a reasonable expectation to be free from prolonged

---

[2] The Ninth Circuit noted that its holding was narrow and that even on public lands a person might have a reasonable expectation of privacy in a hotel room, cabin, or tent.  McIver, 186 F.3d at 1125-26.

5

video surveillance of his backyard.  Cuevas-Sanchez, 821 F.2d at 251.  While the government disagrees with the Fifth Circuit's entire discussion in this regard, it is, in any event, mere dictum, given that the court ultimately determined that the warrant for the surveillance comported with constitutional dictates and that the video evidence accordingly was properly admitted.  See Cuevas-Sanchez, 821 F.2d at 251-52.

In addition, the video camera in Cuevas-Sanchez was situated on the top of a power pole, a location from which a law enforcement officer likely would have had difficulty making observations in person, at least over an extended period of time. Here, by contrast, the cameras were located in nearby buildings in locations from which law enforcement officers could have been – and sometimes were – making observation in person. Accordingly, the comfort the defendant takes in the fact that the First Circuit has cited Cuevas-Sanchez with approval is misplaced, because in that same case the First Circuit recognized that "no legitimate expectation of privacy exists in objects exposed to plain view as long as the viewer's presence at the vantage point is lawful," and that "the mere fact that the observation is accomplished by a video camera rather than the naked eye, and recorded on film rather than in a supervisor's[3]

---

[3] The videotaping at tissue took place in a work setting rather than as part of a criminal investigation.

memory, does not transmogrify a constitutionally innocent act into a constitutionally forbidden one." Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 181 (1st Cir. 2003).

Third, while not explicitly stated in the opinion, it appears that the backyard at issue in Cuevas-Sanchez was that of a single-family residence that arguably was within that home's "curtilage." In stark contrast, 197 West Street is a multi-unit rental property. The First Circuit has long since recognized that "a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building." United States v. Hawkins, 139 F.3d 29, 32 (1st Cir. 1998); see also United States v. Burnette, 375 F.3d 10, 16-17 (1st Cir. 2004). Here, even assuming this defendant had a reasonable expectation of privacy with respect to his girlfriend's apartment,[4] he had no reasonable expectation of privacy even in the interior hallways and other common areas of that building, much less in the common areas wholly outside the building. Given that the surveillance was limited to these common areas outside the building in which the defendant had no reasonable expectation of privacy – that, indeed, were exposed to the view of neighbors and passersby – the defendant's Motion must fail. See also, e.g., United states v. Thomas, 2003 WL 21003462 (D. Conn. 2003).

---

[4] It is the government's understanding that the defendant sometimes stayed overnight in that apartment (and sometimes stayed overnight in a car parked in the driveway).

**CONCLUSION**

For the foregoing reasons, the defendant's Motion should be denied.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:  /s/Robert E. Richardson
     ROBERT E. RICHARDSON
     Assistant U.S. Attorney