UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10186-JLT |
| | ) | |
| HARRY GUZMAN | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY RELATING TO THE CAUSE AND ORIGIN OF THE FIRE CHARGED IN
COUNT ONE

The government hereby respectfully opposes the defendant's

Motion to Exclude Testimony Relating to the Cause and Origin of

the Fire Charged in Count One (the "Motion").  By the Motion, the

defendant seeks to limit the testimony of the government's

origin-and-cause expert regarding the fatal fire charged in Count

One to his observations and photographs of the scene, while

excluding the expert's opinions as to where and how the fire

started.  The Motion should be denied.

ARGUMENT

A.    THE EXPERT TESTIMONY IS ADMISSIBLE

1.    Introduction

Fed. R. Evid. 702 provides as follows:

> If scientific, technical, or other
> specialized knowledge will assist the trier
> of fact to understand the evidence or to
> determine a fact in issue, a witness
> qualified as an expert by knowledge, skill,
> experience, training, or education, may
> testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony
> is the product of reliable principles and
> methods, and (3) the witness has applied the

> principles and methods reliably to the facts
> of the case.

Fed. R. Evid. 702.  The Advisory Committee Notes and subsequent case law indicate that the rule was amended in response to the following Supreme Court decisions (the so-called "Daubert trio") and that these decisions and their progeny remain relevant to the analysis:  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); General Elec. Co. v. Joiner, 522 U.S. 136 (1997); and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).[1]

Rule 702 has substantive and procedural components.  As a substantive matter, Rule 702 provides that expert testimony should be admitted when (1) it would be relevant and helpful to the jury, (2) the witness is qualified to testify given the witness's "knowledge, skill, experience, training, or education", and (3) the actual testimony at issue is sufficiently reliable in view of the three numbered criteria.  Fed. R. Evid. 702.  As a procedural matter, the Supreme Court has held that based on Fed. R. Evid. 702 and Fed. R. Evid. 104(a), a trial court must serve as "gatekeeper" to ensure that the substantive criteria are met. Kumho, 526 U.S. at 141-42; Daubert, 509 U.S. at 592-95; Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001).

---

[1]     Fed. R. Evid. 702, Advisory Committee Notes on 2000 Amendments; Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001); Dhillon v. Crown Controls Corp., 269 F.3d 865, 869 (7th Cir. 2001); First Tennessee Bank National Assoc. v. Barreto, 268 F.3d 319, 332 n.12 (6th Cir. 2001); Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 n.1 (4th Cir. 2001).

2.    **The Expert Report**

The origin-and-cause report in the case at bar is appended

hereto as Attachment A.  It was prepared by former Lawrence Fire

Department Lieutenant Sebastian Bongiorno, who, among other

things, spent the last 10 of his 30 years with the Fire

Department conducting fire investigations; has been certified as

a fire investigator both by the Commonwealth of Massachusetts and

by the International Association of Arson Investigators; has a

degree in fire science from Boston State; and has testified as an

expert in the origin and cause of fires in various state courts.

The report itself demonstrates a careful and exhaustive

examination of the scene of the fatal fire at 48-50 Manchester

Street.  As recommended in the NFPA 921 ("NFPA"), a leading guide

for fire investigation, Lt. Bongirono examined the fire pattern

evidence, proceeding from the area of least damage to the area of

most damage.  NFPA 15.1.  While the report goes into extensive

detail regarding the examination, in general terms, Lt. Bongiorno

made a preliminary scene assessment, then examined the exterior,

then examined the interior, noting at each location and for each

apartment areas of charring and fire damage.  NFPA 15.3, 15.3.3,

15.3.4.  Lt. Bongirono then engaged in preliminary scenario

development and determined that all burn and char patterns

indicated that the area of origin was the rear porch area.  NFPA

15.4.

Lt. Bongiorno then engaged in an intensive examination of the exterior rear porch area, NFPA 15.5, noting, among other things, that the first floor porch area showed areas of moderate heat damage and light charring, with no damage to the staircase leading to the second floor from the deck to approximately six feet up.  Lt. Bongiorno observed extensive fire damage to the second floor and third floor porch area, however.  The third floor decking had fallen, or "pancaked," down onto the second floor deck, and the stairs from the second to the third floor had likewise collapsed down onto the second floor.  The right-hand side of the third floor deck showed heavy charring, and the decking and joists showed moderate burn-through.  The left-hand side showed heavy charring and substantial burn-through. Part of the exterior wall of the building – vinyl siding, wood clapboards, and wood sheathing – had been completely consumed by the fire.  The staircase showed extensive charring.

The second floor porch area showed similar damage: the decking and joists to the right showed heavy charring and moderate burn-through; the left side decking and joists showed heavy charring and substantial burn-through; and a portion of the exterior wall of the building showed charring to the wood sheathing, the vinyl siding and clapboards having been completely consumed by the fire.

The interior examination, by contrast, showed extensive fire

4

damage to the third floor apartments and roof, but in the apartments on the first two floors the fire damage along the rear wall of the building was largely limited to evidence of burning at the ceiling level, with charring greatest at the rear of the building – near the porch area – and decreasing toward the front of the building.

Lt. Bongiron's observations regarding burn and char patterns were visually documented through extensive photographs of the scene.  NFPA 13.2.

Given the presence of lighting fixtures in the rear porch area of the building, Lt. Bongiorno consulted with an electrical consultant and ruled out electricity as a source of ignition.

Lt. Bongiorno also, as part of his investigation, considered statements of building occupants, fire suppression personnel, and law enforcement personnel who had been present during the incipient stages of the fire, as recommended by the NFPA.  NFPA 9.3.3.[2]

Based on his extensive investigation of the scene, including his examination of the physical evidence and all burn and char

---

[2]Lt. Bongiorno, with the assistance of Trooper Donald Bossi, used an accelerant-detection canine at the scene.  The report indicates that they were unable to deploy the dog on the second floor porch area due to safety concerns; a sample taken from that area without the aid of the canine was negative for the presence of accelerants.  After debris was removed from the ground at the bottom of the rear porch area, the canine was deployed and "alerted" four times, although only a sample toward the right tested positive for the presence of an accelerant.

5

patterns, Lt. Bongiorno concluded that the point of origin of the fire was the second level porch area in the left-hand corner, and that the fire was incendiary.

### 3.   Lt. Bongiorno's Expert Testimony is Admissible

There can be little question but that the testimony of Lt. Bongiorno -- including the burn-pattern testimony -- will be relevant and helpful to the jury in its effort to understand the cause and origin of the fire, satisfying the first unnumbered clause of Rule 702.  Fed. R. Evid. 702.  See, e.g., United States v. Gardner, 211 F.3d 1049, 1054 (7th Cir. 2000) ("Here, Dr. DeHaan testified about the cause and origin of the fire, which helped the jury determine whether the fire was caused by arson"); Markum, 4 F.3d at 896 (similar).

With regard to the second unnumbered clause in Rule 702, Lt. Bongiorno, with years of relevant training and experience in determining the origin and cause of fires, is qualified to testify as an expert by virtue of his "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Among other things, Lt. Bongiorno (1) was employed by the Fire Department for 30 years; (2) had been a cause-and-origin investigator for the Department for 10 years; (3) held two certifications in the cause-and-origin field; and (4) has previously testified on the cause and origin of fires.  These qualifications are more than sufficient.  See, e.g., Ferrara &

DiMercurio v. St. Paul Mercury Insur. Co., 240 F.3d 1, 8 (1st

Cir. 2001) (cause-and-origin expert qualified to testify).

The first numbered clause of Rule 702 states that the expert

testimony must be "based upon sufficient facts or data."  Fed. R.

Evid. 702(1).  Lt. Bongiorno clearly had sufficient facts and

data for his burn-pattern analysis and for his ultimate

conclusion that the fire started at the second level of the rear

porch area and was deliberately set.  He thoroughly examined the

building where the fire took place.  Moreover, his examination

yielded numerous details that supported his views.

In this regard, the defendant is critical of Lt. Bongiorno

for not further describing in words the burn patterns that he

observed and for not measuring the depth of char at various

locations.  As the NFPA recognizes, however, a visual

documentation of a fire scene, as through photographs, can

portray the scene better than words.  NFPA 13.2.  Extensive

photographs in this case document the fire patterns that Lt.

Bongiorno observed and upon which he relied.  Among other things,

they confirm that the area of heavy fire damage in the rear porch

area begins at the second level; that the staircase from the

first to second levels is largely intact at the bottom but shows

signs of fire damage from above near the top; that the staircase

from the second to third levels – the one that "pancaked" down

onto the second level – shows signs of heavy fire damage from

beneath; that the decking on the left side of the second level
porch, as well as on that on the left side of the third level
porch, was pretty much consumed by the fire; and that there is
extensive damage, including areas of complete burn-through, to
the exterior walls adjoining the porches on the second and third
levels.   The interior rear walls of the second floor apartments,
by contrast, show no sign of a fire that began inside and made
its way through the walls to the exterior porch.   Given that hot
gases, including flames, are lighter than the surrounding air,
they rise, and, in the absence of strong winds or physical
barriers, will burn upward, with some downward travel as a result
of radiation.   See Kirk's Fire Investigation (5th ed.) At 171.
This well-known behavior of fire is entirely consistent with Lt.
Bongiorno's interpretation of the burn pattern evidence in this
case, including those summarized above.

The defendant's other major complaint is that Lt. Bongiorno
did not measure the depth of the charring that he observed.
While it is true that depth of charring can be useful in
evaluating fire spread, NFPA 4.5.3, in this case, as noted in the
report, there were areas of the rear porch area that were not
just charred but were completely burned through, including areas
of decking and areas of the exterior wall adjoining the porch.
Since depth of char is indicative of the area of construction
exposed to heat for the longest period, id., such areas in this

8

case were obvious.

The second numbered clause of Rule 702 states that the expert testimony must be "the product of reliable principles and methods." Fed. R. Evid. 702(2). Here, Lt. Bongiorno's analysis of the scene was premised largely on his examination and interpretation of burn patterns. Such patterns are recognized by the NFPA -- a guide that is subject to nationwide peer review by private and government experts. Several courts have found similar cause-and-origin testimony to be sufficiently reliable. See, e.g., Gardner, 211 F.3d at 1051-52, 1054 (upholding admission of expert testimony that was based mainly on burn-pattern analysis); Travelers Property & Casualty Corp. v. General Electric Co., 150 F. Supp.2d 360, 364-67 (D. Conn. 2001) (proposed testimony based on burn-pattern analysis sufficiently reliable despite fact that expert waffled on whether NFPA guide was authoritative); Abu-Hashish v. Scottsdale Ins. Co., 88 F. Supp.2d 906, 908-10 (N.D. Ill. 2000) (proposed testimony based on burn-pattern analysis sufficiently reliable even though experts arguably deviated from standards in NFPA guide and no samples from the fire site were tested for presence of accelerants); cf. Ferrara & DiMercurio, 240 F.3d at 9 (discussing burn-pattern testimony in rejecting challenge under Rule 703); United States v. Ruiz, 105 F.3d 1492, 1497 (1st Cir. 1997) (noting significance of burn-pattern testimony in concluding that there was sufficient

evidence supporting arson conviction); <u>United States v. Lundy</u>, 809 F.2d 392, 394-96 (7th Cir. 1987) (no error in admitting certain testimony that was based in part on burn-pattern analysis).

Indeed, the First Circuit upheld the admission of origin and cause testimony based significantly, as here, on burn patterns. <u>United States v. Diaz</u>, 300 F.3d 66, 76 (1st Cir. 2002).  In so doing, the First Circuit stated:

> Here, both [of the origin and cause experts] examined first-hand the [location] where the fire took place.  These examinations yielded numerous details supporting their theories and refuting alternate explanations for the cause of the fire.  Moreover, [the experts] explained in detail the methods and principles they employed in determining the cause and origin of fires, emphasizing the significance of various burn patterns.  They articulated their bases for eliminating alternative explanations for the fire.  We note that other courts have allowed the use of similar cause-and-origin testimony. *See, e.g., Travelers Prop. & Casualty Corp. V. General Electric Co.,* 150 F.Supp.2d 360, 366 (D. Conn. 2001)(challenged expert testimony found to be "product of reliable principles and methods" where cause-and-origin opinion based upon analysis of burn patterns); *Abu-Hashish v. Scottsdale Ins. Co.,* 88 F.Supp.2d 906 (N.D. Ill. 2000).  *Cf. United States v. Ruiz,* 105 F.3d 1492, 1497 (1st Cir. 1997) (noting significance of burn-pattern testimony in ruling on sufficiency of evidence to support arson conviction).

<u>Id</u>.  Although review in <u>Diaz</u> was under the plain error standard, the First Circuit nonetheless clearly recognized that origin and cause evidence, particularly as based on burn-pattern testimony,

is valid.

The final prong under Rule 702 is whether the actual testimony is sufficiently reliable.  Here, as shown, the testimony is based on Lt. Bongiorno's first-hand examination of the scene, and particularly on the burn patterns as described and as documented through extensive photography.  While the defendant notes that Lt. Bongiorno did review witness statements (as provided for in the NFPA), his expert opinion is amply supported by his physical examination of the scene and does not rely on the statements.

## B.   The Court Need Not Conduct a Formal Hearing

In Diaz, the First Circuit noted that the Rule 702 inquiry under Daubert is a flexible one, and that there is no particular procedure that must be followed in carrying out the gatekeeping function under Daubert.  Diaz, 300 F.3d at 73.  The First Circuit quoted language from Kumho Tire in which the Supreme Court emphasized that the trial court has substantial latitude in deciding how to test an expert's reliability, including whether or when special proceedings – i.e., hearings – are required. Diaz, 300 F.3d at 73-74, quoting Kumho Tire, 526 U.S. at 152. The First Circuit also cited with approval both United states v. Alatorre, 222 F.3d 1098, 1102 (9th Cir. 2000), and United States v. Nichols, 169 F.3d 1255, 1262-64 (10th Cir. 1999), for the respective propositions that a voir dire of an expert in the

presence of the jury is permissible under <u>Daubert</u>, and that a trial court has discretion not to hold a pretrial hearing in carrying out its gatekeeping function.

Here, there is no need to hold a pretrial hearing.  As shown above, origin and cause testimony based on burn patterns has been recognized by the First Circuit.  Moreover, the relief the defendant seeks is to limit Lt. Bongiorno's testimony to his observations at the scene and photographic evidence from the scene.  In such circumstances, the Court will be in a position at trial, based on the foundation laid through such testimony, to determine whether Lt. Bongirono's opinion evidence is sufficiently reliable to pass muster under Rule 702.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's Motion should be denied.

Respectfully submitted,


MICHAEL J. SULLIVAN
United States Attorney


By:    /s/Robert E. Richardson
       Robert E. Richardson
       Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

I, Robert E. Richardson, hereby certify that this documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 6, 2006.

                                        /s/Robert E. Richardson
                                        ROBERT E. RICHARDSON