```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL NO. 04-10186-JLT
                            )
HARRY GUZMAN                )
```

**GOVERNMENT'S MOTION IN LIMINE**

The government hereby respectfully submits this Motion in Limine in anticipation of the trial of this matter. By this Motion, the government seeks pretrial rulings (1) that the defendant be precluded from eliciting evidence that an individual named Juan Cruz has not been charged with the arson alleged in Count One, and (2) that portions of the 911 recordings from the night of the fire charged in Count One may be admitted and played for the jury.

**JUAN CRUZ ISSUE**

**Background**

The fire charged in Count One occurred at approximately 3:00 a.m. on April 3, 2003. The fire substantially destroyed a five-unit rental building located at 48-50 Manchester Street in Lawrence. Most of the residents made it out of the building, but a mother and her infant daughter died.

The defendant was spending a lot of time during this period at or outside the home of his girlfriend/common law wife, Solveira Alamo, at 197 West Street, just around the corner from the Manchester Street building. The defendant often slept

outside in Alamo's station wagon.

The defendant spoke to investigators a few days after this fire, claiming, in essence, that he had been sleeping upstairs with Alamo when he heard the sirens. He went downstairs and saw a 15-year-old boy who lived in Alamo's building. They went outside and watched the fire suppression. A man who lived in the neighborhood, however, was driving home on Manchester Street just as the fire was starting. As he passed 48-50 Manchester Street, he saw that it was on fire. He kept driving, and as he passed the intersection with West Street, he looked to the right and saw the defendant (whom he knew from the neighborhood but not by name) and a boy standing on the sidewalk.

On November 12, 2003, ATF Special Agents Wlodyka and Balos went to see the defendant at the Essex County Correctional Facility, where he was being held on other charges. The defendant ultimately agreed to speak again with the agents, but this time provided a markedly different account of his actions that night. He told the agents, in essence, that he had been sleeping in a car parked next to 197 West Street the night of the fire. About 30 minutes before it started, a 16-year-old male named Juan Cruz approached him and the two shared a "blunt." Cruz told the defendant that a Hispanic male named "Chapo" had sold him some bad drugs, and suggested that they "torch" Chapo. The defendant gave Cruz a sheet and a plastic juice container

with gasoline in it, and they went to Chapo's building, located next to the building in which the fatal fire occurred. Cruz tried to start a fire there but was unsuccessful. Cruz then, with the defendant as lookout, went to 48-50 Manchester Street, went up the rear exterior stairs to the third-story porch, retreated down to the second floor, poured gasoline on the sheet, lit it on fire, and ran with the defendant away from the building. The agents asked the defendant to sign a statement reduced to writing, but he demurred, saying he would have to first consult a lawyer.

While being detained at the Norfolk County House of Correction in 2005, the defendant also spoke to his cellmate about the fatal fire. In substance and among other things, the defendant told his cellmate that a person called "Juan Bo" had gotten into an argument over drug money with one of the two victims of the fatal fire. The defendant said that he met up with "Juan Bo" late on the night of the fire. They went to the building and the defendant walked up the back stairs to the third floor and set the porch on fire with gas, with "Juan Bo" acting as lookout. The defendant said he was supposed to get money for the fire. The defendant told his cellmate that nobody was supposed to get hurt in the fire, which was intended as a warning over the drug money dispute.

The government anticipates that, in addition to the

foregoing, there will be other evidence at trial indicating that Juan Cruz was involved in setting the fatal fire together with the defendant.

Juan Cruz has not been charged to date.

**Argument**

The fact that Juan Cruz has not (at least to date) been charged with the arson set forth in Count One is not relevant to the defendant's trial on that count of the Indictment. To the contrary, admission of this fact would serve only to confuse and mislead the jury, in contravention of Fed. R. Evid. 403.

In United States v. Sanders, 95 F.3d 449 (6th Cir. 1996), the Sixth Circuit confronted an argument that the trial court had erred by refusing to admit evidence that a co-conspirator had been acquitted, while the government had been permitted to adduce evidence that two other co-conspirators had pleaded guilty. In rejecting this contention, the Sixth Circuit observed that, generally, guilty pleas of co-defendants are not admissible at trial -- indeed, are never admissible as substantive evidence of a defendant's guilt -- and that they had been admitted in the case of the Sanders trial only for the limited purposes of enabling the trial jury to assess the co-conspirators' credibility. Sanders, 93 F.3d at 454. The Sixth Circuit noted that, had the other, non-testifying co-conspirator pled guilty, his guilty plea would *not* have been admissible. The Sixth

Circuit concluded that, "under a parallel treatment for guilty pleas and acquittals, his acquittal may not be admitted either." Id.  The Sixth Circuit noted that, although the defendant had not presented any theory for admission of the acquittal other than to influence perceptions of credibility, it appeared that he would have like to use the acquittal as substantive evidence of his own innocence.  Id.  The Sixth Circuit, suggesting that acquittals of third parties are no more admissible as substantive evidence in a criminal trial than guilty pleas, upheld the trial court's refusal to admit the evidence.  Id.

Similarly, in United States v. Scarborough, 128 F.3d 1373 (10th Cir. 1997), the Tenth Circuit upheld the decision of the district court to preclude the defendant from adducing testimony that federal charges against his brother had been dismissed on speedy trial grounds. In so doing, the Tenth Circuit stated:

> We will not disturb [the district court's] determination that such testimony lacked foundation or could confuse the jury about issues that were not probative of defendant's guilt or innocence.  Moreover, the district court was appropriately concerned that such testimony could lead to improper argument -- i.e., that Donald Scarborough's innocence was linked to Michael Scarborough's innocence, which, in turn, was conclusively demonstrated by the dismissal of the charges against him.

Scarborough, 128 F.3d at 1380.  See also, e.g., United States v. Wimbush, 2006 WL 3055494 (4th Cir. 2006)(Defendant's right to present defense not infringed by decision to exclude guilty pleas

5

of others as "'the mere fact that his companions pleaded guilty was not 'relevant' -- that is, it did not have a 'tendencey fo prove or disprove' *appellant's* culpability.'" (Citing California Court of Appeal decision in case)); United States v. Cannon, 475 F.3d 1013, 1024 (8th Cir. 2007)("Contrary to Cannon's argument, sharing information with the jury about a co-conspirator's charges or lack thereof *creates* a potential denial of a fair trial, not the contrary." (Citation omitted)); United States v. Barrientos, 758 F.2d 1152, 1155 (7th Cir. 1985)("Information regarding the reason for a co-defendant's absence is irrelevant to [the jury's] task.  It only adds grist to the mills of speculation for the jurors to know that one defendant has admitted to guilt or that another has been found not guilty.").

Here, the fact that charges are not pending against Juan Cruz is irrelevant to the jury's task of determining the defendant's guilt or innocence.  Admission of such information would serve only to confuse and mislead the jury, potentially leading the jury to conclude --erroneously -- that the evidence somehow serves as evidence of innocence with respect to the defendant.  Accordingly, this Court should rule the evidence inadmissible.

## 411 CALLS

The government intends to offer recordings of some of the 911 calls made with respect to this fire, including the 911 call

6

of the man who saw the defendant standing with the youth shortly after the fire started. Such calls do not run afoul of the Confrontation Clause. To the contrary, as the Supreme Court held in <u>Davis v. Washington</u>, 126 S.Ct. 2266 (2006), 911 calls in which the caller is seeking simply to facilitate police assistance to an ongoing emergency is not testimonial. Because the same is true of the calls at issue here, this Court should rule the calls admissible.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                  United States Attorney

                   By:  <u>/s/Robert E. Richardson</u>
                        Robert E. Richardson
                        Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day, January 2, 2008, caused a copy of the foregoing document to be served by Electronic filing on counsel for Harry Guzman.

                               <u>/s/Robert E. Richardson</u>
                               ROBERT E. RICHARDSON