```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )
                                )
          v.                    )    CRIMINAL NO. 04-10186-JLT
                                )
HARRY GUZMAN                    )
```

### DEFENDANT'S MOTION IN LIMINE

Defendant Harry Guzman respectfully moves (1) to preclude the government from presenting a second arson investigator to offer redundant testimony regarding the charged fire at 48-50 Manchester Street, Lawrence on April 3, 2003, and (2) to exclude evidence relating to an alleged jailhouse confession.

1. The Government's Second Fire Expert

During pretrial preparation of this case, the government indicated that it would offer a single fire expert to testify regarding the origin of the April 3, 2003 fire. On June 7-8, 2006, this Court conducted a Daubert hearing regarding that witness' expertise, and entered an order permitting the witness to testify as an expert.

However, in its witness list filed on January 2, 2008, the government notified defendant that it would offer a second fire expert, a fire examiner named Jeffrey Lowe. Mr. Lowe had apparently examined the Manchester Street property on retainer from an insurance company (not the Lawrence Fire Department), in an effort to evaluate the claim of the property owner for loss

coverage.  The government disclosed the existence of a report by Mr. Lowe by letter dated November 6, 2007.  Defendant has not had the opportunity to seek a <u>Daubert</u> hearing regarding this expert.

Defendant respectfully moves to bar the government from offering a second (and redundant) expert at this late date.

2.  <u>The Jailhouse Confession and Defendant's Request for Discovery in Aid of this Motion to Exclude It</u>

The government proposes to offer the testimony of Juan Ramos, a jailhouse snitch, who alleges that Guzman confessed to him about setting the charged fire.  The jailhouse confession should be excluded as elicited in violation of the Sixth Amendment.

Ramos is a government cooperator, and had a signed cooperation agreement with the government at the time of Guzman's alleged jailhouse statement.  Ramos began his cooperation following his 2004 federal arrest for drug dealing.  He was debriefed by the government on several occasions, including on December 20, 2004, March 2, 2005, and March 16, 2005, at which times he discussed his gang involvement in the Lawrence area, particularly with the Latin Kings with whom he was a high ranking gang member, and with a gang allied with the Latin Kings, called the Dome Dwellers.  The Dome Dwellers were led by Eddy Lopez, and Ramos provided detailed information about the gang and about a homicide by Lopez.

During the course of his cooperation, Ramos was moved from

institution to institution, first from Old Colony Correctional to MCI Cedar Junction.  While being held at Cedar Junction, he met with government agents, giving them detailed information about persons with whom he was newly detained, including phone numbers and contact information about gang members.

On March 25, 2005, Ramos formally signed a cooperation/plea agreement, wherein he agreed "to cooperate fully with law enforcement agents" and "not withhold any information."  At about the same time, Ramos was moved again, this time to Dedham Jail, where he was placed in Guzman's cell.  Guzman was facing charges including arson resulting in the death of two persons and was awaiting a decision of the Attorney General whether he would be prosecuted capitally.  According to the government, Guzman had already made a custodial confession that he committed the arson by acting as a lookout for a person named Juan Cruz, a person known to the government as a Dome Dweller and as a close associate of Eddie Lopez.  Mr. Ramos, who knew Lopez and the Dome Dwellers and who was a government cooperator, was moved into Guzman's cell.

In October 2005, Ramos sought a meeting with the government to speak about his alleged conversations with Guzman.  He said that Guzman confessed to him about the arson, implicating Cruz in the crime, and had spoken about Cruz's involvement with the Dome Dwellers.

The Supreme Court has held that the government violates the Sixth Amendment when, acting through an undisclosed agent including a jailhouse snitch, it "deliberately elicits" incriminating statements from an accused "after he has been indicted" and his right to counsel has attached.  Massiah v. United States, 377 U.S. 201, 206-07 (1964); see also Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986); Maine v. Moulton, 474 U.S. 159, 171 (1985).  A violation can arise even if it is the accused who initiates the conversation with the undisclosed state agent.  Id., at 174-76.  As the Supreme Court has emphasized, the "knowing exploitation by the state of an opportunity to confront the accused without counsel being present is as much a breach of the state's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity."  Id. at 176.

The placement of Ramos in the cell of Guzman, at a time when Ramos was actively assisting the government in an investigation of the Dome Dwellers, violated Massiah, and must result in suppression of the alleged confession.  In support of this result, defendant is seeking the discovery outlined below.

Even if the government did not specifically place Ramos in Guzman's cell, it cannot resist suppression.  A cooperator cannot be sent to a jail to fish among the detainee population for inculpation.  See *United States* v. *York*, 933 F.2d 1343, 1348 (7th

4

Cir.) (previous government informant was acting as state agent because law enforcement had instructed him "to collect information"), cert. denied, 502 U.S. 916 (1991), overruled in part on other grounds, Wilson v. Williams, 182 F.3d 562, 565 (7th Cir. 1999).  During his earlier custody at MCI Cedar Junction, Ramos actively worked to elicit inculpatory conversations with detainees so as to enhance the worth of his cooperation.  Indeed, even after he left Dedham and served out the balance of his committed sentence, he conditioned his continuing cooperation on whether the government would honor its obligations to him.  In a letter dated February 20, 2006, Ramos wrote that "[i]f you guys keep your deal with me I'm also willing to help on taking down more gang members or helping on other matters as long as you guys help me."  He again complained by letter of March 26, 2006 about not getting the benefit of his cooperation, adding: "Also I could help the government on a lot of stuff when I'm released."  And in a letter dated July 30, 2006, he wrote: "It's like I told [Agent] Woods before[,] if I see that you guys do live up to your part I'm willing to help out on other things."  Ramos' reference to "Woods" was to FBI agent Jeff Wood who several times met with Ramos before Ramos was placed in Dedham, and from whom Ramos appears to have learned about the benefits of continued cooperation with the government.

In aid of this motion to bar the confession, defendant seeks

discovery, namely:

1. All documents, correspondence, email or communications referring or relating to Mr. Ramos' placement at Old Colony Correctional, MCI Cedar Junction or Dedham House of Correction, or to any efforts to move him from or to any of these institutions, or in any way mentioning or discussing his custodial placement(s);

2. All documents, notes or data entries or summaries referring to, relating to or describing the cooperation of Mr. Ramos, or its duration, targets, goals or scope;

3. All documents, memos, email, communications, data entries or writings referring or relating to the placement of Mr. Ramos in the cell of Mr. Guzman, or to Mr. Ramos' cell assignments and how they occurred;

4. All handwritten notes of the debriefing of Mr. Ramos;

5. The 5K motion filed for Omi Montanez, for whom Ramos sought to allocate some of the benefit of his cooperation;

6. All documents, communications or data relating to the criminal associations of Omi Montanez and/or Mr. Ramos, or in any way referring or relating between the association between the two men.

                DAVID A. RUHNKE, ESQ.
                CHARLES P. McGINTY, ESQ.
                Co-counsel for Harry Guzman

                By:  /s/ Charles P. McGinty

                                Charles P. McGinty
                                   B.B.O. #333480
                                Federal Defender Office
                                408 Atlantic Avenue, 3rd Floor
                                Boston, MA 02110
                                Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 8, 2008.

                                /s/ Charles P. McGinty

                                Charles P. McGinty