UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10186-JLT |
| | ) | |
| HARRY GUZMAN | ) | |

DEFENDANT'S OPPOSITION TO GOVERNMENT'S
SECOND MOTION IN LIMINE

Defendant, Harry Guzman, opposes the government's motion in limine which seeks (1) to exclude a tape recording of Juan Cruz where Cruz stated that he was asked to set the fire and that he had previously set fires, and (2) to exclude testimony of a witness, Javier Rodriguez, regarding a statement by Cruz where he admitted that he had set the fatal fire.

1. Juan Cruz Tape

The government has already introduced into evidence a statement of Juan Cruz, in which he told investigators that he arrived by taxi after the fire was underway.  Without acknowledging any inconsistency, the government now seeks to deny defendant the opportunity to admit contrary evidence about the absent declarant.  The applicable rule is Fed. R. Evid. 806:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)( C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.  Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's

> hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain....

As explained in the Advisory Committee Notes to the Rule, "The declarant of a hearsay statement which is admitted in evidence is in effect a witness.  His credibility should in fairness be subject to impeachment and support as though he had in fact testified."  Fed. R. Evid. 806, Advisory Committee Notes.

More than fairness, however, is at issue, since this issue gives rise to constitutional concerns.  The Constitution gives the "accused," not the government, the right of confrontation.  The accused's right to present witnesses in his own defense is implicated where an absent declarant's testimony is improperly excluded from evidence, as the government urges here.  See generally Washington v. Texas, 388 U.S. 14 (1967).  This is particularly so where the government has already offered out-of-court statements of Cruz, but now seeks to deny defendant the opportunity to challenge this evidence.

Further, the evidence which defendant seeks to admit satisfies an independent ground of admissibility, under Fed. R. Evid. 804(b)(3) as declarations against penal interest, and is both highly relevant and reliable.  Evidence already admitted at trial shows that Cruz was a member or affiliated with the Dome Dwellers gang.  Government witness Juan Ramos, a high ranking member of the Latin Kings with close ties to the Dome Dwellers,

-2-

knew about Cruz (as "Juan-Bo"), but knew nothing about Guzman. According to pretrial discovery, government agents early in the case believed Cruz was involved in setting the fatal fire and on several occasions recorded consensual intercepts of Cruz.  In the intercept at issue here, a government cooperating witness (CW) asked Cruz if he would do "an insurance job" and burn down a building.  The question was a warmup to the question the CW was poised to ask: whether Cruz had burned the Manchester Street building.  Cruz replied that he had burned a building or buildings "in South Lawrence" and "a building on Springfield Street."  Cruz said that he had committed the arsons "with gas and we poured it on the stairs on all the walls on everything. Then we lit it..."  Id.

The government presumably does not dispute that arsons occurred in South Lawrence, and does not dispute that fires occurred on Springfield Street, but as to the latter only asserts that the technique of arson was different.  According to Cruz, he set some fires by pouring gasoline on stairs and walls.  He did not particularize how each fire was set, but described how "we" took bottles filled with gas and threw them inside.  In discovery, the government provided basic reports relating to two Springfield Street fires, blazes on the street referenced by Cruz.  One blaze, according to the Lawrence Fire Department Incident Report, involved "fire on first floor front to rear upon

-3-

arrival and extending out first floor windows on Bravo side communicating to automobile parked near window. Fire extended to second floor and third." The cause, according to the report, was "under investigation." HG559-562. The description bears uncanny similarity to the Manchester Street fire at issue here, and is a corroborating circumstance indicating the trustworthiness of Cruz's claim to have set a fire on Springfield Street.

The taped intercept of Cruz next shows that the CW drove Cruz past the site of the fatal fire (48-50 Manchester Street, Lawrence), and pointedly asked Cruz if he set the fatal fire:

| | |
|---|---|
| CW: | You're the one that burned down that house there. |
| Cruz: | Ha, Ha, dog. |
| CW: | Straight up and down dog. |
| Cruz: | I didn't have anything to do with that. |
| CW: | No, I'm just laughing right now because there's rumors out there. |
| Cruz: | I had a feeling that you were asking me because of that house. |
| CW: | Yeah, because... |
| Cruz: | That's why you took me around that house. |
| CW: | Yeah, because I wanted to see but then again I didn't know how to tell you. |
| Cruz: | Na, yo, didn't got, I was the suspect, but I got stop by the FBI. |
| CW: | That's what it was, the nigars that I knew they told me it was some dude name Juan that was involved. So I was like damn if that was Juan I'm going to ask him. |

>  Cruz:   They wanted me to do it but I didn't do it because you know two people died there.

HG 163 (emphasis added).

Cruz, aware that he was a suspect, admitted that he had been asked to set the fire ("they" wanted him to do it). As the Supreme Court has stated, "[e]ven statements that are on their face neutral may actually be against a declarant's interest" in the particular context of the case. Williamson v. United States, 512 U.S. 594, 603 (1994) (statement that declarant hid a gun would be against his interest if gun was murder weapon). Here, there was little neutral about Cruz admitting that he had been asked to set the fire, showing that the fire was planned (and not the spontaneous act asserted in the Guzman statement, as more fully set out below). The fact that Cruz disavowed setting the fire is itself inadmissible under Williamson, since only statements which are self-inculpatory, and not self-serving, are admissible as penal declarations. Id. at 604. But his statement that he had been asked to set the fire, in view of the government's claim that Cruz participated in some way in setting the fire, is certainly an inculpatory statement bearing sufficient indicia of reliability.

The government mistakenly asserts that the statement was not contrary to Cruz's interest since it was made to a confederate, but cites no cases in support of the argument. A statement can be against penal interest even if made to a confederate. See,

-5-

e.g., United States v. Lang, 589 F.2d 92 ("Appellant argues, however, that since Carey made the statement to a person to whom he had recently sold counterfeit bills and who he believed to be a confederate, he could not reasonably be aware that by making the statement he was subjecting himself to criminal liability. This position, in our view, is not tenable."); United States v. Santarpio, 560 F.2d 448, 453 (1st Cir. 1977)(Statements by bookmakers concerning gambling operations, intercepted by wiretap, were against penal interest. "We find ... no fatal absence of reliability in the statements made by gamblers to the informants. These admissions against penal interest by confessed bookmakers concerning gambling operations of which they were a part were certainly entitled to weight."); United States v. Mock, 640 F.2d 629, 631-632 (5th Cir. 1981) (defendant's statement to former wife admitting involvement in drug conspiracy does not preclude its being against defendant's interest).  The issue is whether Cruz's statements reasonably exposed him to penal consequences, and Cruz's statements that he had been offered the arson opportunity and had set other fires, voiced at the same time that he acknowledged being a suspect in the fire, satisfies this condition.

    Finally, the government struggles with its argument regarding 404(b) for the reason that the rule does not bar such evidence against other persons, not defendant.  See United States

v. Gonzalez-Sanchez, 825 F.2d 572, 583 (1st Cir. 1987).  In any event, if Cruz is treated, consistent with Rule 806, "as though he had in fact testified,' his course of arsons would be entirely admissible in impeachment.

At bottom, Cruz's statements are critically important to the defense since they directly contradict the alleged statement of Guzman to agents.  In his statement, Guzman said that Cruz "told him that Chapo sold him some bad drugs ... and said let's torch him."  On this version, without planning or forethought, the two went to Chapo's building, the building next to 48-50 Manchester Street, and "Guzman stated that Cruz tried to set Chapo's building on fire but could not get the fire to start.  (Guzman explained that this was due to the building being of brick construction."  In fact, the building was wood framed.)

> Guzman stated that Cruz then went next door to the building where the fatal fire occurred and went up to the top of the 3rd floor rear exterior porch.  Guzman stated that Cruz heard noises and returned to the second floor.  Guzman stated that Cruz told him to check out front as a lookout. Guzman stated that after returning from the front of the building, he told Cruz that no one was out there.

According to the government's account of the interview, Guzman stated that at that point he saw Cruz on the second floor of the porch pouring gasoline and starting the fire.  This version, that Cruz set out to torch the adjoining building but in frustration turned to 48 Manchester, is at variance with Cruz's statement that he was asked to set 48 Manchester afire.

It is flatly unfair for the government to present a statement by Cruz in support of its theory of prosecution, but to deny Guzman the same opportunity and right.  The statements of Cruz are critical to the defense, and are admissible under Rule 806 and 804.

2. <u>Testimony of Javier Rodriguez</u>

The government seeks to exclude testimony of a witness, Javier Rodriguez, regarding a statement by Cruz admitting that he had set the fire.

The proposed testimony is as follows: A couple weeks after the fatal fire, State Trooper James Welch walked into a local park to hand out an Arson Reward flyers relating to the fire. According to the ATF Report of Interview of Javier Rodriguez:

> Javier Rodriguez stated that approximately 5 minutes after trooper Welch left the area, he overheard Juan tell Papoucho "now that the people know it's me, they are going to rat me out." Javier Rodriguez stated that Papoucho told Juan LNU "I don't think so." Javier Rodriguez added that he was sitting approximately 3 feet away from Juan LNU and Papoucho LNU. Javier Rodriguez stated that Juan LNU then told Papoucho in Spanish: "I just told you that I started the fire, how do I know that you 'niggers' won't rat me out." Javier stated that Papoucho replied "don't worry I'm not a rat." Javier Rodriguez also stated that Papoucho told Juan LNU "the people you were with will not snitch because they were with you." Javier Rodriguez stated that after hearing this conversation, he felt sick because of the fact that 2 people died in that fire.

Several things are apparent from this account: Cruz immediately realized he had made a declaration against penal interest by voicing his worries that the people around him could go to the

-8-

police.  And Javier Rodriguez took the conversation very seriously, so much so that he was sickened by what he had just heard.  Indeed, the government viewed the significance of the encounter in the park as serious enough to present Javier Rodriguez's testimony to the grand jury.  According to the transcript of Rodriguez's testimony:

> Q: After the Troopers left the area, did you hear Juan Cruz tell Papoucho anything?
>
> A: Yes.
>
> Q: And what did you hear him say?
>
> A: I heard him say, "Now that there is a reward out for the information, now some people, people that know that I," Juan, "started the fire are going to rat me out."

Transcript of Grand Jury Testimony of Javier Rodriguez, February 28, 2004 at 10.

This is a textbook case of a declaration against penal interest.  Cruz made the statement, and immediately recognized what he had done.  Rodriguez appreciated the gravity of Cruz's admission, as did the government, which brought the statement to the attention of the grand jury.

For these reasons, the government's request to bar the testimony of Javier Rodriguez should be denied.

```
                              DAVID A. RUHNKE, ESQ.
                              CHARLES P. McGINTY, ESQ.
                              Co-counsel for Harry Guzman


                         By:  /s/ Charles P. McGinty

                              Charles P. McGinty
                              B.B.O. #333480
                              Federal Defender Office
                              408 Atlantic Avenue, 3rd Floor
                              Boston, MA 02110
                              Tel: 617-223-8061
```

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 22, 2008.

```
                              /s/ Charles P. McGinty

                              Charles P. McGinty
```

-10-