UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10186-JLT |
| | ) | |
| HARRY GUZMAN | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant Harry Guzman respectfully submits this memorandum in aid of sentencing. On January 24, 2008, Guzman was found guilty of one count of arson resulting in death, under 18 U.S.C. § 844(i).

In the wake of two recent Supreme Court cases, Gall v. United States, 128 S.Ct. 586 (2007), and United States v. Kimbrough, 128 S.Ct. at 574-75 (2007), this Court has broad ranging power to fashion an appropriate sentence. In Kimbrough, the Court held that sentencing courts "may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines." Id. at 570. As described by the First Circuit in United States v. Martin, 2008 U.S. App. LEXIS 5906 (1st Cir. March 21, 2008):

> "after Gall [v. United States, 128 S. Ct. 586 (2007)], the sentencing inquiry -- once the court has duly calculated the GSR – ideally is broad, open-ended, and significantly discretionary. United States v. Vega-Santiago, F.3d , , 2008 U.S. App. LEXIS 3757, *9 (1st Cir. 2008) (en banc). At that point, sentencing becomes a judgment call, and a variant sentence may be constructed "based on a complex of factors whose interplay and precise weight cannot even be precisely described." Id. at 2008 U.S. App. LEXIS 3757 at *9].

In <u>Martin</u>, the First Circuit affirmed a below-career-offender sentence for an offender with a long history as a drug dealer.  The Court stated:  "In the last analysis, a sentencing court should not consider itself constrained  by the guidelines to the extent that there are sound, case-specific reasons for deviating from them.  Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale."  The court noted that

> "We think it follows that there is not a single
> reasonable sentence but, rather, a range of reasonable
> sentences. See Dixon, 449 F.3d at 204. Consequently,
> reversal will result if -- and only if -- the
> sentencing court's ultimate determination falls outside
> the expansive boundaries of that universe."

Indeed, even the career offender provision of the guidelines are now more flexible:

> "The Supreme Court's recent decision in Kimbrough, 128
> S. Ct. at 574-75, opened the door for a sentencing
> court to deviate from the guidelines in an individual
> case even though that deviation seemingly contravenes a
> broad policy pronouncement of the Sentencing
> Commission.  Here the district court grounded the
> defendant's sentence in case-specific considerations,
> which is the accepted practice in the post-Gall world.
> See Grossman, 513 F.3d at 598 [2008 WL 160612, at *5].

<u>Id</u>.

1.  <u>History and Characteristics of the Defendant</u>

Mr. Guzman is presently 27 years old, born in Methuen, Massachusetts.  His parents are both originally from Puerto Rico, but met after they moved to Massachusetts, and have been together for 34 years.  At the time of his birth, Mr. Guzman's family

lived in an apartment in the Essex Projects in Lawrence.  When he was in 8th grade, Mr. Guzman, along with his parents and a sister, went to live in Puerto Rico.  However, because Mr. Guzman had difficulty reading and writing Spanish, the family returned the next year to Lawrence, where he attended the Greater Lawrence Regional Vocational Technical School.  He has had no education beyond the 9th grade, although he briefly attended a GED program at the Adult Learning Center in Lawrence and had some Job Corps training.  He has had a number of jobs, but has difficulty maintaining employment.

Mr. Guzman is an alcoholic who started drinking at age nine and continued to drink more and more as he got older, becoming a regular and heavy drinker throughout adolescence and into adulthood.

In December 1994, when he was 14, Mr. Guzman was hospitalized at Hampstead Hospital in New Hampshire after an incident in which he got very drunk at a school dance and reportedly got into an altercation with another student.  He was hospitalized for 6 days and referred for follow-up counseling. According to the neuropsychological evaluation done during this hospitalization, Mr. Guzman has "borderline intellectual development, with his full scale IQ of 78...."  The report goes on to state, "We would note the possibility of some auditory perceptual difficulties which we believe warrants further

investigation."  There is no indication that any follow-up regarding these test results ever took place.

On July 4, 2001 Mr. Guzman jumped from a bridge in a suicide attempt.  He was hospitalized overnight in the emergency room. There was no mental health follow-up.

In the summer of 1998, Mr. Guzman became involved with Soveira Alamo, his girlfriend whom he refers to as his wife. According to both Mr. Guzman and Ms. Alamo, a year into their relationship, they decided to have a baby together and their daughter Natalie was born on December 15, 2000.  He was present at his daughter's birth.  Ms. Alamo also has an older daughter, who calls Mr. Guzman her "step daddy."

2.  The "Kinds of Sentence and Sentencing Range" Established Under the Guidelines and "Any Pertinent Policy Statement"

Under § 3553(a)(4), the Court must consider the applicable guideline range, including whether a departure from the range is applicable in this case.

The applicable guideline for a violation of § 844(I) is § 2K1.4.  The guideline contains a cross reference which states: "If death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above."

-4-

§ 2K1.4(c)(1).  The guideline does not identify the "most analogous guideline."

The PSR asserts that the appropriate guideline would be § 2A1.1 for First Degree Murder.  But First Degree Murder under 18 U.S.C. § 1111 calls for mandatory life, whereas the charge here calls for the lesser sentence of "any term of years" including life, making clear that life is <u>not</u> the presumptive sentence.  Further, § 2K1.4 does not call for application of this specific guideline, and § 2A1.1 itself does not state that it applies to <u>all</u> instances where death results from the commission of felonies.  Rather, it states that "this guideline also applies when death results from the commission of <u>certain</u> felonies." § 2A1.1 [emphasis added].  The guideline does not enumerate § 844(I) as being among those felonies.  § 2A1.1.

Even if § 2A1.1 is applicable to this case, the guideline states that "[l]ife  imprisonment is not necessarily appropriate in all such situations...."  Instead, it recommends a departure: "If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted."  As noted by Judge Wolf in <u>United States v. Patriarca</u>, 912 F.Supp. 596, 628 (D.Mass. 1995): "This advice seems to be addressed to a situation where, as would be the case here, the defendant's liability is based on felony-murder principles; if the individual who personally committed the crime did not cause the death

-5-

intentionally, he would not have committed first degree murder."
While Application Note 1 goes on to say that the "Commission does
not envision that departure below [second degree murder, which
has a Base Offense Level of 33] is likely to be appropriate," a
greater departure is permissible.

Here the First Superseding Indictment charged that defendant
engaged in an act of violence, knowing that "the act created a
grave risk of death to a person ... such that participation in
the act constituted a reckless disregard for human life, and
Matilda Medina and Angelic Duran died as a result of the act...."
Thus, the indictment itself alleged that the deaths resulted from
"a reckless disregard," not from intentional conduct.  During the
interview of Guzman, the agents themselves spoke with Guzman
about how a person could set a fire without intending to cause
death.  Moreover, in its closing, the government told the jury
that Guzman "did at least what he had admitted to the agents he
did," see Tr. Jan. 23, 2008 at 45, that is that he had acted as
lookout for Juan Cruz who set the fire.  Combined with the jury's
question during deliberations about aiding and abetting
liability, it is apparent that the jury verdict rested on a
finding that Guzman aided the conduct of another.

The appropriate guideline for the charged conduct was for
Second Degree Murder.  The base offense level for second degree

murder in the 2002 Guideline Manual was 33.  In Criminal History
Category III, the resulting guideline would be 168-210 months.

3.  The Career Offender Guideline Overstates Defendant's
    Criminal History and the Likelihood He Will Engage in
    Further Criminal Conduct

     The probation report asserts that defendant is a career
offender.  The predicates are two assault and battery convictions
arising 8 months apart when defendant was 19.  In both instances,
police responded to calls from his family's home that defendant
was drunk and disorderly.  In one instance, defendant "pushed one
of the officers with his right shoulder" and in the second, as he
was being escorted out of the home, he "lunged forward, dragging
both officers into the bushes at the bottom of the stairs."  Both
instances involved disorderly conduct while intoxicated, not
conduct implicating greater concerns about public safety.

     In United States v. Martin, supra, the First Circuit
affirmed a below-career-offender sentence for an offender with a
long history as a drug dealer.  The Court stated:  "In the last
analysis, a sentencing court should not consider itself
constrained by the guidelines to the extent that there are sound,
case-specific reasons for deviating from them.  Nor should a
sentencing court operate in the belief that substantial variances
from the guidelines are always beyond the pale."

     Here, the instances of drunken conduct while being arrested,
if treated as career offender predicates, result in a sentencing

-7-

range which overstates defendant's criminal history.  The
sentencing range, if defendant is treated as a career offender,
would be 360-life (offense level 37 in criminal history category
VI).  The range for Second Degree Murder, as noted above, would
be 168-210 months.

Defendant recommends that the Court impose a sentence at the
approximate midpoint of the differing guidelines, between the
14½ -17 range and the 30 year range, namely a sentence of 23
years.  Such a sentence would reflect the gravity of the offense
of conviction, but would also reflect that the career offender
status overstates defendant's criminal history.

<u>CONCLUSION</u>

Defendant recommends that the Court impose a sentence at the
approximate midpoint of the differing guidelines, between the
14½ -17 range and the 30 year range, namely a sentence of 23
years.

                              DAVID A. RUHNKE, ESQ.
                              CHARLES P. McGINTY, ESQ.
                              Co-counsel for Harry Guzman

                    By:  /s/ Charles P. McGinty

                         Charles P. McGinty
                           B.B.O. #333480
                         Federal Defender Office
                         408 Atlantic Avenue, 3rd Floor
                         Boston, MA 02110
                         Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF

-8-

system, will be sent electronically to the registered
participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-
registered participants on May 8, 2008.

/s/ Charles P. McGinty

Charles P. McGinty