UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10186-GAO

UNITED STATES,

v.

HARRY GUZMAN,
Defendant.

ORDER ADOPTING REPORT AND RECOMMENDATION
March 20, 2015

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendant's motion under 28 U.S.C. § 2255 for habeas corpus relief be denied. The defendant has filed an objection to the Report and Recommendation ("R&R"), and the United States has filed a reply to the objection.

The defendant has raised five objections to the R&R. Four of the objections are simply reargument of the points made by the defendant in support of his § 2255 motion. I agree with the magistrate judge's disposition of those issues.

The only new matter raised in his objections is that the R&R overstates the strength of the government's case during trial and thus underestimates the prejudice the defendant suffered as a result of trial counsel's alleged ineffective assistance. However, the R&R explicitly acknowledges weaknesses in the government's case, noting, for example, the "inconsistent statements and possible motives for giving incomplete and untruthful testimony" of the government's witnesses as well as "the Government's lack of definitive evidence and scientific proof." (R&R at 10 (dkt. no. 236).) Taken as a whole, the R&R contains a thoughtful and careful

analysis of the trial evidence. Based on that analysis, the magistrate judge concluded – and I agree – that, despite the weaknesses in the government's case, there was substantial evidence to support the jury's verdict of conviction.

Having reviewed the relevant pleadings and submissions, as well as the objection to the R&R, I approve and ADOPT the magistrate judge's recommendation in its entirety.

Accordingly, the defendant's Motion to Vacate (dkt. no. 181) is DENIED.

Because the petitioner has not "made a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

# United States District Court
# District of Massachusetts

HARRY GUZMAN,
      Petitioner,

v.                             CRIMINAL NO. 04-10186-GAO

UNITED STATES OF AMERICA,
      Respondent.

## *REPORT AND RECOMMENDATION ON MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN CUSTODY (#181)*

COLLINGS, U.S.M.J.

### *I. Introduction*

Harry Guzman("Guzman" or "petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (#181)  Following a jury trial, the petitioner was found guilty of one count of

Arson Resulting in Death under 18 U.S.C. § 844(i) and (2). The United States of America ("respondent" or "the Government") opposes the petitioner's motion. (##187 and 230)

## II. Factual Background

On September 8, 2004, a grand jury returned a first superseding indictment charging the petitioner with arson resulting in death, in violation of 18 U.S.C. § 844(i) and (2). (#14) The indictment was based on a fire that occurred on April 3, 2003 at a multifamily dwelling at 48-50 Manchester Street in Lawrence, Massachusetts. The fire resulted in the death of Matilda Medina, and her baby, Angelic Duran. *Id.* The indictment gave notice of the applicability of the death penalty statutes, 18 U.S.C. §§ 3591(a)(2) and 3592(c)(1) through (16). *Id.* On January 27, 2006, the Government informed the court that it did not intend to seek the death penalty. (Dckt. 1/27/06) On January 24, 2008, after a seven-day trial, a jury returned a guilty verdict. On May 13, 2008, Judge Joseph L. Tauro sentenced the petitioner to life in prison.

## III. Procedural Background

The petitioner filed an appeal which was denied by the First Circuit Court of Appeals on June 15, 2010. (#175-1); *United States v. Guzman*, 603 F.3d 99,

111 (1st Cir. 2010), *cert. denied*, 131 S.Ct 487 (2010).  On October 12, 2010, a petition for writ of *certiorari* was denied by the United States Supreme Court. (#179-1) On October 12, 2011, the petitioner filed his Motion to Vacate under 28 U.S.C. § 2255. (#181) At the time the petitioner filed his Motion to Vacate, he did not file an accompanying memorandum.  The Government filed an opposition to the petitioner's motion on December 16, 2011.  (#189) Thereafter, the petitioner filed a memorandum in support of his Motion to Vacate. (#219)  The Government then filed a response to the petitioner's memorandum.  (#226)[1]  The petitioner filed a reply on March 26, 2014. (#234) The case is now poised for disposition.

## IV. Analysis

### A. Overview

Guzman seeks section 2255 relief based on the premise that trial counsel was constitutionally ineffective in several respects.   Specifically, petitioner alleges that trial counsel was constitutionally deficient for failing to:  (1) contest whether the fire was intentionally set, (2) inform the jury that false confessions are not uncommon, (3) object to the district court's lack of explanation for

---

[1]

The Government's memorandum appears to have been docketed twice. *See* #226 and #230.

Guzman's sentence, and (4) argue mitigating factors in favor of a sentence less than life.

## B. Standard of Review

A prisoner may seek post conviction relief from a federal court conviction pursuant to 28 U.S.C. § 2255 if the sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack. Title 28 U.S.C. § 2255(a).   These allegations of error must "reveal fundamental defect[s] which, if uncorrected, will result in a complete miscarriage of justice" and cannot be a "surrogate for a direct appeal." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (internal citations and quotation marks omitted).

The Supreme Court has provided a two-pronged test for analyzing ineffective assistance of counsel claims. A petitioner must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Second, a petitioner must show that he was prejudiced by his counsel's deficient performance. *Id.* at 687. *Strickland* creates a strong presumption of reasonable professional assistance.

*Gould v. United States*, 657 F. Supp.2d 321, 323 (D. Mass. 2009) (citing *Strickland*, 466 U.S. at 689).

Under the first prong, the Court has interpreted "adequate legal assistance" to mean "the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland*, 466 U.S. at 688. Moreover "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Under the second prong, the petitioner must show that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. A defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012)("'[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.'")(quoting *Strickland*, 466 U.S. at 697).

## C. Ground One: Ineffective Assistance of Counsel
### For Failing to Contest that Fire was Intentionally Set

The petitioner alleges that counsel provided constitutionally ineffective assistance of counsel by conceding that the fire was arson. As argued by the petitioner, the defense won a significant victory when it successfully moved to bar the Government's expert from offering an opinion as to whether the fire was incendiary. (#76, #77, #78) According to the petitioner, trial counsel's comment "This was a terrible crime. There is no doubt about that." undermined this victory by effectively conceding that the fire was arson. (#219 at 7) Petitioner argues that "rather than hold the prosecution to its burden of proof, trial counsel simply conceded that the fire was arson." *Id.* The Government argues that while the fire expert was prohibited from offering an opinion stating that the fire was intentionally set, there was no reasonable alternative view of the evidence. (#187 at 14-15) Consequently, the Government avers, petitioner's trial counsel cannot be constitutionally deficient for not arguing an unreasonable point. The Government also contends that there was no reasonable probability that the outcome of the trial would have been different had counsel challenged the finding of arson.

During jury instructions, the judge laid out the four elements of the petitioner's crime. "First, that the defendant damaged or destroyed or

attempted to damage or destroy a building or other real or personal property by means of a fire. Second, that the property was used in or affecting commerce. Third, that the defendant acted maliciously. And, fourth, that the fire resulted in the death of one or more persons." Tr. 1/24/08, pp. 8-9.

While the Government's case was built upon circumstantial evidence, the totality of this evidence was substantial. Pedro Garcia, the downstairs neighbor of Harry Guzman, testified that he had seen the petitioner on the night of the fire. Garcia stated that the petitioner had a white t-shirt and red gas container, and that the petitioner and a man named Juan Cruz asked him to be a lookout while they went to the back of 48-50 Manchester Street, the apartment building that was burned. Tr. 1/17/08, pp. 29-31. Garcia further testified that he saw Guzman and Cruz on top of the porch of the apartment building, and that Guzman put down a white t-shirt on the porch. Tr. 1/17/08, p. 31. Garcia saw Guzman and Cruz come running from the building, and shortly thereafter there was black smoke coming from the side of the building. Tr. 1/17/08, p. 32.

Luisito Rivera, a resident of the neighborhood in Lawrence where the fire took place also testified. Tr. 1/17/08, p.63. Rivera testified that on the night of the fire he was returning to his home after going to a nightclub in Boston. Tr. 1/17/08, p. 64. As he drove home he saw smoke and fire at the apartment

building. Tr. 1/17/08, p.65. Rivera testified that as he drove to call 911, he saw the petitioner and Pedro Garcia on the street together. Tr. 1/17/08, pp. 67-70.

Further supporting the Government's evidence was Juan Ramos, a former gang member who was the petitioner's cellmate in prison. Ramos testified that the petitioner admitted to setting the fire, and added that the petitioner did so with the intention of sending a message about unpaid drug money. Tr. 1/17/08, pp. 130-131.

Additional evidence was provided by Konstantinos Balos, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Tr. 1/22/08, pp. 32-107. Agent Balos testified that the petitioner confessed to him that he was present when Juan Cruz set fire to the building. Tr. 1/22/08, pp. 46-47. Agent Balos' testimony regarding the petitioner's confession was confirmed by Thomas Wlodyka, another special agent with the ATF who was present during the petitioner's interview. Tr. 1/22/08, p. 119.

Bolstering the witnesses' testimony that Guzman set fire to the building was the testimony of fire investigator Sebastian Bongiorno. Bongiorno testified that "all the fire seemed to be located in the rear of the building," (Tr. 1/16/08, p.169) and that there was "really no fire event on that first floor porch level."

Tr. 1/18/08, p. 42. He further testified that there was "nothing burning on the ground of this [first floor porch] side of the house." Tr. 1/18/08, p. 43, Tr.1/18/08, p. 52 ("And we have no fire damage down here (indicating) on the ground level.") He also testified that based on the evidence, there was nothing within the apartments on the second floor that caused the fire outside. Tr. 1/18/08, p.45. Confirming the testimony of the witnesses, Bongiorno offered his assessment that all the fire came in from the outside. Tr. 1/18/08, p. 46.

Lending support to Bongiorno's judgement was the testimony of the witnesses to the fire. The Government called not only survivors who had been inside the building during the fire, *see* testimony of Carmen Taveras, Tr. 1/16/08, p. 134; Gerardo Hiraldo, Tr. 1/16/08, p. 139; Pedro Ulloa, Tr. 1/16/08, p. 148; Belkis Hernandez, Tr. 1/16/08, p. 122; and Julian Quezada, Tr. 1/16/08, p.152, but also several of the first responders who were on the scene, *see* testimony of Officer Marlene Bistany, Tr. 1/16/08, p. 82, p. 86; Officer Michael Colantuoni, Tr. 1/16/08, pp. 92-93; Deputy Fire Chief John Marsh, Tr. 1/16/08, p. 103; Firefighter John McInnis, Tr. 1/16/08, p. 111. Each of these witnesses lent support to the Government's theory that the

petitioner set fire to the second floor of the back porch.

In his closing argument, petitioner's attorney attempted to undermine the Government's case by questioning the credibility of Pedro Garcia, Luisito Rivera and Juan Ramos. Trial counsel exacted concessions from each witness as to their inconsistent statements and possible motives for giving incomplete and untruthful testimony. Petitioner's counsel also highlighted the Government's lack of definitive evidence and scientific proof. In his closing, trial counsel argued, "[a]nd it's a case of words. There is [sic] no science in this case. There is no fingerprints, no DNA. There is no, nothing like that in this case. It's words, nothing but words." Tr. 1/23/08, p. 130. Further, trial counsel pressed its own theory of the case: that the fire was started by Juan Cruz, with the help of his friend Jose Rivera. Tr. 1/23/08, pp. 139-40. The strategy of the defense was to undermine the credibility of the various witnesses, and to illuminate the lack of concrete evidence.

Disagreement with counsel's decision to challenge the evidence is not sufficient to support a motion to vacate. "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (internal citation

and quotation mark omitted). Despite petitioner's contention, it was not constitutionally ineffective for trial counsel to adopt a strategy of undermining the credibility of the Government's witnesses, and to forgo an argument challenging the finding of arson. Not only was trial counsel's strategy reasonable, but petitioner has failed to show that a challenge to the finding of arson would have changed the outcome of the trial.

Even the case to which petitioner cites for support is unavailing. Petitioner cites to *Scarpa v. Dubois*, 38 F.3d 1 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995) for support of his contention that trial counsel was ineffective for ceding an element of the underlying crime. *Scarpa*, however, is easily distinguished. In the case, the First Circuit Court of Appeals found trial counsel to be ineffective for specifically presenting a theory that "cemented the prosecution's theory of the case." *Id.* at 11. Whatever failings Guzman's attorney may have had, unlike *Scarpa*, he did not "dig the hole deeper" or inculpate his client during the course of his defense. *Id.*

Further, petitioner has failed to demonstrate that a challenge to the finding of arson would have changed the outcome of the trial. In a case such as this, in "'weighing the prejudicial effect of counsel's errors, [the court] must

consider the totality of the evidence before the judge or jury.'" *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007)(quoting *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002)). While petitioner may have wanted trial counsel to put on a defense questioning the underlying finding of arson, there was substantial evidence, albeit circumstantial, suggesting that the fire was arson. There was no evidence of any accidental source of ignition. As the Government stated, "there was no plausible explanation for a fire starting in the dead of the night, with everyone asleep and with no apparent accidental natural sources, other than that it was intentionally set . . ." (#187 at 17) Without a showing that trial counsel's action caused actual prejudice, there is no relief under section 2255.[2] A showing of "some conceivable effect on the outcome" is not enough. *Dugas*, 506 F.3d at 9 (internal citation and quotation omitted).

For the foregoing reasons, I shall recommend that petitioner's claim that counsel was ineffective for failing to challenge the finding of arson be denied.

### D. Ground Two: Ineffective Assistance of Counsel For Failing to Inform the Jury that False Confessions are not Uncommon

---

[2]

Even in the *Scarpa* case the court found that the defendant was not entitled to relief because there was no showing of prejudice. In *Scarpa*, although the court found ineffective assistance of counsel because defense counsel conceded the elements of the crime, the court nonetheless found that there was no prejudice because the attorney's ineffectiveness was "minimized by the one-sidedness of the evidence." *Scarpa*, 38 F.3d at 16.

The petitioner argues that it was ineffective of trial counsel not to inform the jury that false confessions are common. (#219 at 10) Petitioner states that:

> trial counsel made no effort to introduce expert testimony about false confessions. Equally troubling, trial counsel also did not seek to have the district court inform the jury - through either voir dire or jury instructions - that false confessions are a real phenomenon.

*Id.* at 13-14.

The Government counters that there is no case law supporting a *per se* finding of ineffectiveness for failing to inform or instruct on the phenomenon of false confessions, and that petitioner has failed to show that the outcome of the trial would have been different if he had adopted such a strategy.

Petitioner is correct that trial counsel did not bring in an expert or request a jury instruction on false confessions. However, in his closing argument, trial counsel did argue:

> You bring your common experience and your knowledge of the world. You can't pick up the newspaper without reading about somebody who has confessed to something they haven't done and then they turn out to be cleared by DNA. Some people even come off of Death Row having confessed to a crime they didn't commit.

Tr. 1/23/08, p.140.

Despite the statement made during closing, petitioner argues that Guzman's November 2003 statement to the ATF agents was the "centerpiece" (#219 at 9) of the Government's case, and that it was ineffective not to offer expert testimony undermining the reliability of the confession or to request a jury instruction on the phenomenon of false confessions. Neither of these two failures, however, rise to the level of a Sixth Amendment claim. Although the petitioner cites to cases where courts have accepted the theory of false confessions, the petitioner neglects to offer evidence that an expert would have testified favorably in this instance. *See generally, Tash v. Roden*, 626 F.3d 15, 20 (1st Cir. 2010)(court found that it was not ineffective for defense attorney to refrain from presenting testimony of expert given that proposed testimony about false confessions was based upon a theory that had not been established as reliable).

Furthermore, in the case cited by the petitioner, *United States v. Jacques*, 784 F. Supp.2d 59 (D. Mass. 2011) the court affirmed the denial of expert testimony on the science of false confessions. The *Jacques* court did instruct the jury on the existence of false confessions, but the court excluded expert testimony because it did not meet *Daubert* standards. *See also, United States v.*

*Redlightning*, 624 F.3d 1090, 1115 (9th Cir. 2010)("there was no reliable evidence in the record to support a theory of expert testimony that the interrogation techniques used raised a risk of false confession."), *cert. denied*, 131 S.Ct. 2944 (2011); *Commonwealth v. Robinson*, 449 Mass. 1, 7, 864 N.E. 2d 1186, 1190 (Mass. 2007)(court properly excluded testimony of expert who would have testified on whether the police tactic used was likely to induce a false confession because the evidence fell "far" short of standards of admissibility); *Commonwealth v. Hoose*, 467 Mass. 395, 419-420, 5 N.E.3d 843, 863-64 (Mass. 2014)(court's denial of expert testimony on false confession upheld, but Massachusetts Supreme Judicial Court acknowledged that phenomenon is a growing area of social science research and therefore didn't foreclose admission of such testimony in future cases).

While petitioner may have disagreed with trial counsel's strategy, it was not unreasonable or below the level of the profession to refrain from providing such evidence. Additionally, petitioner has failed to show that the outcome of the trial would have been different if an expert had testified or if a jury instruction had been given. He provides no evidence that an expert would have testified favorably on his behalf, or that such testimony would have even been

allowed. Further, given the weight of the other evidence against the petitioner, it is inaccurate to say that the confession was the centerpiece of the Government's case. For the foregoing reasons I shall recommend that the petitioner's claim be denied.

### E. Ground Three: Ineffective Assistance of Counsel For Failing to Object to the District Court's Lack of Explanation for Guzman's Sentence

The petitioner also argues that trial counsel was ineffective for failing to object to the district court's lack of explanation for his sentence. (#219 at 15) After hearing argument and allocution from both parties regarding Guzman's sentence, the court merely stated "Okay. I am going to sentence you to life." Tr. 5/13/08, p. 33. Petitioner correctly states that "despite the state of the law at the time, at sentencing the district court failed to give <u>any</u> explanation for its sentence . . . ." (#219 at 16) On the basis of this error by the trial court, petitioner argues that "trial counsel was deficient in failing to object to the district court's lack of explanation at sentencing, and that error prejudiced Guzman because there is a reasonable probability that, but for trial counsel's error, the result of Guzman's appeal would have been different." (#219 at 15) Petitioner also posits that "there is a reasonable probability that the result of Guzman's appeal would have been different if not for trial counsel's failure to

preserve the issue for appeal." *Id.* The basis for this claim is that had counsel objected, the Court of Appeals would have not have applied the "plain error" test but rather one for garden-variety error which would have resulted in an outcome in his favor.

The Government argues that it, the Guidelines, and the PSR all recommended a sentence of life imprisonment, that the parties submitted lengthy sentencing memoranda, and that there was a hearing on the issue of sentencing in which the court asked questions. According to the Government each of these facts provide an adequate basis by which the judge determined the length of sentence. (#187 at 33-35)

Under 18 U.S.C. § 3553(c) a court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . ." Courts have repeatedly said that the explanation need not "be precise to the point of pedantry" and that "[e]ven silence is not necessarily fatal . . .". *United States v. Turbides-Leonardo,* 468 F.3d 34, 40-41 (1st Cir. 2006), *cert. denied,* 551 U.S. 1170 (2007); *United States v. Arango,* 508 F.3d 34, 48 (1st Cir. 2007)(court did not provide full explanation for sentence, nonetheless no error because its reasoning could be readily inferred from the record), *cert. denied,* 552 U.S. 1324

(2008).

While the court in this instance did not explicitly enunciate its reasoning, trial counsel was nevertheless not constitutionally ineffective for failing to object. The parties had already submitted sentencing memoranda and had a lengthy hearing on the issue of where the defendant's conduct fell within the Guidelines. At sentencing, the court asked whether a sentence of life was available based only on the conviction, without regard to any of the other potentially relevant conduct. "[I]s the life sentence still available for the one crime that he has committed? That is what I am interested in hearing." Tr. 5/13/08, p. 3[3] The Government answered the court's question by referencing other cases in which a life sentence was imposed where an arson resulted in death. The court asked again "[b]ut you are saying you don't need that [the evidence of Guzman's other conduct] for the life sentence?" Tr. 5/13/08, p. 8. By focusing the arguments of the parties on whether a life sentence was

---

[3]

The main issue at sentencing was which was the most analogous cross reference to apply to the petitioner's conduct. Section 2K1.4 applied to the defendant's conduct, and had a cross reference which states "[i]f death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above." U.S. Sentencing Guidelines Manual §2K1.4(c). The PSR and the <u>Footnote 3 (continued)</u>
Government both argued that the most appropriate cross reference was that for First Degree Murder, §2A1.1, which calls for life imprisonment. The petitioner challenged the application of the Guidelines to his sentence in his direct appeal. Reviewing the district court's interpretation of the Guideline *de novo*, the First Circuit found that there was no error. *Guzman*, 603 F.3d at 111. ("The analogous provision, as required by §2K1.4(c), is clearly §2A1.1, under both the text of the Guidelines and our precedent.").

recommended under the guidelines based solely on the conduct in the underlying case, the court simplified the bases on which it could impose the sentence. Given the underlying conduct justified a life sentence, it was within the bounds of reason for petitioner's trial attorney to assume the judge's reasoning was already reflected within the record, and that no further explanation was needed.[4]

Within an exchange with defense counsel, the court noted that the charged offense carried a possible sentence of life.

> **Mr. McGinty:** Here the government charged an offense which carries a term or carries a possible sentence of any term of years. So under those circumstances the issue is going to be –
>
> **The Court:** Such as life.
>
> **Mr. McGinty:** Including, including life, but life is one among the sentences that may be imposed –
>
> **The Court:** It's a choice.

Tr. 5/13/08, p. 21.

---

[4]

The facts present here are readily distinguishable from those in *United States v. Millan-Isaac*, 749 F.3d 57 (1ˢᵗ Cir. 2014). In the *Millan-Isaac* decision, the First Circuit remanded a case for resentencing because the trial court had failed to calculate the applicable Guidelines range on the record, and had failed to offer any written explanation for imposing a sentence outside of the Guidelines. Here, the sentence imposed was in accordance with the Guidelines recommendation.

The imposition of the life sentence was completely justified based on the record. Using the §2A1.1 as a cross reference, the only sentence recommended by the guidelines was life. "Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Rita v. United States*, 551 U.S. 338, 359 (2007).

On this record, it is difficult to see how counsel's decision constituted ineffective assistance. The First Circuit has consistently stated the standard in these words, *viz.*, "[i]t is only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,' that the ineffective assistance prong is satisfied." *Knight,* 447 F.3d at 15.[5] I do not see that counsel's decision not to object was "patently unreasonable."

---

[5] As I wrote in the case of *McCray v. Mitchell*, 2014 WL 5464104, * 3 (footnote 2) (D. Mass., October 28, 2014), "[i]n the *Knight* opinion, no attribution is given for the quotation. However, research has revealed that it comes from the Fifth Circuit's *en banc* decision in *Strickland*, i.e., *Washington v. Strickland,* 693 F.2d 1243, 1254 (5th Cir. 1982). The Fifth Circuit's decision was reversed by the Supreme Court in *Strickland,* 466 U.S. 668, an opinion which was issued over twenty years before the First Circuit's decision in *Knight*. However, despite the quotation coming from a decision which was reversed, the quotation is not in conflict with the Supreme Court's holding in *Strickland*, and the First Circuit has, as recently as December, 2013, cited the principle as current law. *Pena v. Duckhaut,* 736 F.3d 600, 605 (1st Cir. 2013); *see also United States v. Valerio,* 676 F.3d 237, 246 (1st Cir. 2012); *United States v. Rodriguez,* 675 F.3d 48, 56 (1st Cir. 2012); *West v. United States,* 631 F.3d 563, 567 (1st Cir.), *cert. denied,* 132 S.Ct. 268 (2011); *Tevlin v. Spencer,* 621 F.3d 59, 66 (1st Cir. 2010); *Abrante v. St. Amand,* 595 F.3d 11, 19 (1st Cir.), *cert. denied,* 131 S.Ct. 168 (2010)." Thus, I shall apply the standard set forth in the *Knight* case in the instant case.

In addition, the petitioner must show that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692. In order to establish prejudice, there needs to be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner fails to establish that the actions of trial counsel in failing to object caused prejudice. The imposition of a life sentence was recommended based upon the Guidelines, and the district court was well within its purview to conclude that a life sentence was appropriate. "Unless a party contests the Guidelines sentence generally under §3553(a) - that is, argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way - or argues for departure, the judge normally need say no more." *Rita,* 551 U.S. at 357.

The First Circuit has found that while sentencing courts must rule on any disputed portion of the presentence report or other controverted matter, they "implicitly resolve[] the fact when [their] statements and the sentence imposed showed that the facts were decided in a particular way." *United States v.*

*Zehrung*, 714 F.3d 628, 632 (1st Cir. 2013)(internal quotation and citation omitted); *see also, United States v. Espinal-Almeida*, 699 F.3d 588, 619 (1st Cir. 2012)("As we have said, brevity and inattention are not the same things and this is especially so when the imposed sentence falls within the Guidelines range."), *cert. denied*, 133 S.Ct. 1837 (2013); *United States v. Davila-Gonzalez*, 595 F.3d 42, 49 (1st Cir. 2010)("So it is here: we may infer from the protracted arguments and colloquy preceding the imposition of sentence that the court below considered all the arguments and evidence before settling upon an appropriate sentence.").

On appeal, the First Circuit noted that it was "troubled by the district court's failure to explain at sentencing why Guzman would serve a life sentence," it nonetheless found that the sentence should be affirmed under the plain error standard. *Guzman*, 603 F.3d at 109. Despite the lack of reasoning on the record, the First Circuit found that a "failure to provide an adequate explanation is not *per se* plain error," and that "reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report . . . ." *Id.* at 110. As noted by the First Circuit, there was a lengthy sentencing record which included the parties' written memos, oral argument,

and the PSR. It was clear from the record that not only did the Government adopt the recommendation of the PSR for a life sentence, but so too did the court. *Id.* ("The sentencing record also includes the PSR, the district court's statements at the sentencing hearing, and the district court's later statement of reasons, which adopted the PSR."). Sentences that fall within the properly calculated guideline "require a lesser degree of explanation than those that fall outside the guideline range." *Turbides-Leonardo,* 468 F.3d at 41; *United States v. Navedo-Concepción,* 450 F.3d 54, 57(1st Cir. 2006)("The more obvious the reasons for a [sentencing] choice, the less that needs to be explained.").[6]

In these circumstances, it is difficult to see how the First Circuit would have come to any different decision had trial counsel objected. The most likely

---

[6]

The cases cited by Guzman's counsel do not compel a different conclusion. In the case of *United States v. Garcia-Carrasquillo,* 483 F.3d 124 (1ˢᵗ Cir. 2007), all the trial judge said was that "she had considered the appropriate adjustments and the 3353(a) factors" but "[s]he did not explains her guidelines calculations, nor did she include any reasoned analysis or

Footnote 6 (continued)
reference any evidence that influenced her decision" and the Court of Appeals was ". . . unable to discern the Court's reasoning by looking to the record of the parties' arguments." *Id.* at 132. This is not the scenario which unfolded at Guzman's sentencing. The case of *United States v. Cirilo-Munoz,* 504 F.3d 106 (1ˢᵗ Cir. 2007) is *sui generis* involving a murder of a policeman in Puerto Rico in which the actual shooter turned state's evidence and received a lower sentence than did Cirilo-Munoz who was a lesser participant. *Id.* at 107-08. Such a situation cries out for a reasoned explanation by the trial judge. Manifestly, that case is not this case. Yet still, while reversing the trial judge, the First Circuit noted that: "Despite our willingness to excuse brief or summary explanations of sentences in some cases where the court's reasoning can be inferred, we should not resort to such inferences when the sentencing stakes are so high *and the sentence imposed by the district court is difficult facially to understand." Id.* at132 (emphasis added). The sentence imposed by the district court upon Guzman is certainly not "difficult facially to understand."

outcome would have been that for all of the reasons the Court found that there was no plain error, it would have ruled the error harmless applying a routine review of trial court errors.

For all of the foregoing reasons, I shall recommend that claim three be denied.

### F. Ground Four: Ineffective Assistance of Counsel For <u>Failing to Argue in Favor of a Sentence Less than Life Imprisonment</u>

The petitioner argues that trial counsel was constitutionally ineffective for failing to argue at sentencing for a downward departure based on Guzman's "tragic personal history." (#219 at 27) Petitioner states that failing to argue the mitigating circumstances at sentencing violated the Sixth Amendment. The Government counters that much of the information concerning the potentially mitigating factors was already available to the court, and that there is nothing in the record to suggest that the court would have imposed a lower sentence if a more cohesive narrative had been told by trial counsel. (#226 at 23-25)

In essence, the petitioner argues that trial counsel was not vociferous enough in his argument for mitigating circumstances. Despite this contention, trial counsel's efforts at sentencing cannot be said to be outside "the broad norms of professional competence." *Owens v. United States,* 483 F.3d 48, 57 (1st

Cir. 2007). In the petitioner's sentencing memorandum, trial counsel provided a clear portrait of the hardships and challenges that Guzman faced. The memorandum notes his lack of education beyond 9th grade, his alcoholism, his borderline intellectual development and IQ, as well as his suicide attempt. (#136 at 3-4) Trial counsel also provided the court with voluminous records painting the picture of the petitioner. This included ten letters of support written by family and friends, as well as a petition signed by 58 people in the Lawrence area who pled for mercy for the petitioner. (#134, #136 and #138) During the disposition, trial counsel argued at length for a sentence of 23 years stating that "life imprisonment is not necessarily appropriate in all such situations." Tr. 5/13/08, p. 21. Additionally, as noted by the Government, the PSR included an extensive history of the petitioner's mental and emotional health, as well as his addiction issues. (PSR at 22-23)

While petitioner may have wanted a more elaborate argument to have been made for mitigation, trial counsel's actions were not so poor as to constitute ineffective assistance of counsel. Petitioner has failed to show prejudice for counsel's failure to argue more artfully for a downward departure. There is no sense that the court would have granted a downward departure based on the factors put forth. "To undermine the substantive reasonableness

of a within-the-range sentence, a defendant must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable.' " *United States v. Madera-Ortiz*, 637 F.3d 26, 30 (1st Cir. 2011)(quoting *United States v. Navedo–Concepción*, 450 F.3d 54, 59 (1st Cir. 2006))(further internal quotation marks omitted), *cert. denied*, 131 S.Ct. 2982 (2011). While petitioner alleges that his personal history warranted a downward departure, there was equally compelling evidence provided by the PSR and the Government against granting one. For the foregoing reasons, I shall recommend that the ineffective assistance of counsel claim as alleged in claim four be denied.

### V. Conclusion

Accordingly, I RECOMMEND that the petitioner's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#181) be DENIED, and that Final Judgment enter accordingly.

### VI. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of

this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603(1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

November 21, 2014.

27